**Jacqueline L. MADDOX, Plaintiff,**

v.

**GRANDVIEW CARE CENTER, INC., Defendant.**

**Civ. A. No. 83–75–ATH.**

United States District Court,
M.D. Georgia,
Athens Division.

May 6, 1985.

Janet E. Hill, Athens, Ga., for plaintiff.

Curtis L. Mack, Atlanta, Ga., for defendant.

---

OWENS, Chief Judge:

. This is an employment discrimination action commenced under Title VII of the Civil Rights Act, 42 U.S.C.A. §§ 2000e *et seq.* (West 1981), wherein plaintiff alleges that she was forced to resign from her employment with defendant on account of her pregnancy. A nonjury trial was held on November 27–28, 1984. This order constitutes the court's findings of fact and conclusions of law.

## FINDINGS OF FACT

1. Defendant Grandview Care Center, Inc. operates a nursing home for elderly residents in Athens, Georgia. The Center normally cares for approximately 100 residents, and employs between sixty and sixty-five employees over three eight-hour shifts, thereby providing twenty-four hour care. The nursing staff consists of an RN Supervisor, LPN charge nurses, and nursing assistants.

2. Plaintiff Jacquelin Maddox was employed as a nursing assistant from December 22, 1981, until her termination on December 6, 1982. She worked on the night shift, from 11:00 p.m. to 7:00 a.m., for which she was paid $3.55 an hour, slightly more than minimum wage. In a June, 1982, performance evaluation, defendant rated her as an "excellent" and "dependable" employee.

3. In 1980, Mrs. Maddox became pregnant with her first child. Due to complications, the infant was born prematurely and died only fifteen hours after an emergency caesarean section delivery.

4. Mrs. Maddox learned that she was pregnant again in September of 1982. She was advised by her physician that she could expect complications with this pregnancy as well.

5. Mrs. Maddox indeed began experiencing illnesses related to her pregnancy. Upon advice from her physician, she requested and received a week of sick leave in early November, 1982.

6. Mrs. Maddox continued to experience complications with her pregnancy. Her physician advised against any strenuous activity, and a note to this effect was received by Mrs. Maddox's supervisor.

7. On November 30, 1982, plaintiff met with her supervisor, Mr. Edwards, the Director of Nursing. She expressed her concerns for the health and safety of her unborn child, as well as her physician's orders against strenuous employment. She then requested a leave of absence, without pay,[1] to begin immediately and to extend through the duration of her pregnancy, approximately six months. Mr. Edwards told her that company policy only permitted a three month maternity leave of absence. He further advised her that even this three month leave of absence required the approval of Mrs. Williamson, the administrator, who at that time was out of town attending a sorority convention. Mr. Edwards was not authorized to act on plaintiff's leave request; Mrs. Williamson had not authorized anyone to so act in her absence. Mrs. Maddox formally filed her request for a six month leave of absence on November 30th and did not return to work because of complications arising from her pregnancy.

8. The defendant's leave of absence policies in effect in November and December of 1982 stated: "Maternity leave is limited to three months per employee." For illnesses other than pregnancy, defendant's policy provided that "leave of absence for illness may be granted on a doctor's recommendation and with the administrator's approval...." While defendant's officers testified that an employee could request an extended leave of absence at the expiration of three months upon proof of an illness arising from pregnancy, this "policy" was not expressly set forth in the personnel manual, and neither Mrs. Williamson nor Mr. Edwards could name a single employee

---

**1.** Defendant's leave policy provided no compensation during the period of absence. The only benefit extended was the assurance of a position with the company upon return, and a continuation of health insurance coverage (partially funded by the employee) during the absence.

who had obtained such an extended maternity leave under the policy in effect in 1982. Trial Transcript Vol. II at 26; Vol. I at 74.

9. Defendant also had a policy which provided that an employee who failed to report to work for three consecutive workdays without calling and arranging a substitute would be subject to termination.

10. Mrs. Williamson did not review plaintiff's leave request until December 6, 1982. By this time, plaintiff had missed three consecutive workdays. She was called into the office and advised that she was being terminated for violating the three day rule. She was given the option to resign, which she accepted. Mrs. Williamson never ruled on her leave request.

## CONCLUSIONS OF LAW

■ Defendant Grandview Care Center, Inc. is an employer subject to the requirements of Title VII. That act provides that "[i]t shall be an unlawful employment practice for an employer ... to discharge any individual ... because of such individual's ... sex...." 42 U.S.C.A. § 2000e–2(a)(1) (West 1981). The act further provides:

> The terms "because of sex" or "on the basis of sex" include ... because of or on the basis of pregnancy, childbirth, or related medical conditions; and women affected by pregnancy, childbirth, or related medical conditions shall be treated the same ... as other persons not so affected but similar in their ability or inability to work....

*Id.* § 2000e(k).

Defendant's leave policy, as it existed in November of 1982, was discriminatory on its face. It expressly stated "[m]aternity leave is *limited* to three months per employee" (emphasis added), while a leave of absence for "illness" could be granted for an indefinite duration.

Defendant argues that its policy was not facially discriminatory because a pregnant employee could obtain a three month maternity leave and then apply for an extended "illness" leave. However, the written policy is silent as to such a "possibility"; on its face it clearly states that any leave related to pregnancy and childbirth is limited to three months. Moreover, neither Mrs. Williamson nor Mr. Edwards could name a single instance in which such an extended leave had been granted to an employee already out on maternity leave. Trial Transcript Vol. II at 26; Vol. I at 74. Most importantly, when Mr. Edwards explained the leave policy to plaintiff on November 30th, he stated that maternity leave was limited to three months, and he did not volunteer any information about the possibility of an extension. Trial Transcript Vol. II at 58; 72. The court rejects defendant's contention that the possibility of an extended leave cured the facially discriminatory treatment set forth in defendant's policies; the contention is simply not credible in light of the actual application of those policies. The policy as presented to plaintiff was quite clear: as of November 30th, she was ineligible for a leave of absence for the duration of her pregnancy, even though an absence of similar length was available to male employees for other health reasons. The facially discriminatory leave policy constitutes *direct* evidence of unlawful discrimination on account of pregnancy. *See Trans World Airlines v. Thurston,* —— U.S. ——, ——, 105 S.Ct. 613, 620, 83 L.Ed.2d 523 (1985).

*The Same Decision Test*

■ Defendant argues that plaintiff was terminated for violating the three day absence rule, not because she was pregnant. Therefore, defendant argues, the same decision to terminate would have been made regardless of the facially discriminatory leave policy. Because plaintiff has established direct evidence of discriminatory intent, *i.e.,* the facially discriminatory leave policy, the defendant can prevail on this claim only by proving by a preponderance of the evidence that the same decision would have been reached despite the discriminatory leave policy. *Lee v. Russell County Bd. of Education,* 684 F.2d 769, 774 (11th Cir.1982).

On November 30, 1982, defendant, through its agent, Mr. Edwards, knew plaintiff was pregnant, it knew plaintiff's physician had warned against strenuous exertion, and it knew that plaintiff, upon sub-

mitting her leave request, would not be reporting to work thereafter because of her pregnancy and her physician's advice. Therefore, defendant was in fact advised by plaintiff that she would be absent during the three days in question. Thus, there was no basis for terminating plaintiff pursuant to the three day rule.

 Defendant suggests that "[n]one of the medical evidence demonstrates that the plaintiff's pregnancy-connected condition was sufficiently egregious to justify her failure to report for duty on the [three] days...." Defendant's Proposed Findings of Fact and Conclusions of Law, ¶ 6 at 10. This is absurd. Plaintiff had lost her first child because of complications during pregnancy. Then, in the midst of her second term, she began to experience the same complications. Her physician warned against working strenuously. The court is aware of no evidence more compelling than as presented by Mrs. Maddox. Defendant was fully aware of these circumstances, and knew that plaintiff would not return to work after November 30th. The defendant was totally unjustified in terminating Mrs. Maddox pursuant to the three day rule. The same decision to terminate would not have been made absent the discriminatory leave policy. Without the invalid leave policy limiting maternity leave to three months, plaintiff would have been granted a leave of absence for the duration of her pregnancy, just as any male employee would have received a leave of equal duration upon presentation of similarly compelling medical evidence. Defendant has not established by a preponderance of the evidence that the same decision would have been reached in the absence of its unlawful leave policy.[2]

## CONCLUSION

In summary, this court finds that plaintiff was terminated because of a facially discriminatory leave policy. When plaintiff was told that she could not receive a leave of absence for the duration of her pregnan-

cy, she was faced with the untenable choice of losing her job or the risk of losing her baby. Because defendant would have allowed a leave of absence of an equivalent duration for any other health condition of comparable severity, plaintiff was the victim of unlawful discrimination because of her pregnancy. Defendant's claim that she was terminated for failing to report to work for three consecutive days without prior notice is without any possible merit. This is a case that cries out for justice. The Pregnancy Amendment to Title VII provides a remedy for the injustice sustained by plaintiff. It is hereby ORDERED, ADJUDGED and DECREED that defendant Grandview Care Center, Inc. terminated plaintiff Jacqueline L. Maddox's employment in violation of Title VII of the Civil Rights Act, 42 U.S.C.A. § 2000e–2 (West 1981). The parties are directed within fifteen days to advise the court if it will be necessary for the court to resolve the issue of damages in this case.

SO ORDERED, this 6th day of May, 1985.

---

**2.** In the alternative, even if defendant's leave policies do not constitute "direct" evidence of discrimination, this court would not hesitate to find that plaintiff satisfied a burden of persua-

sion in establishing that defendant's purported nondiscriminatory reason for terminating her was a mere pretext, and that plaintiff was unlawfully discharged because of her pregnancy.