**Armando VILLA, Plaintiff–Appellant,**

v.

**CITY OF CHICAGO, Jane Byrne and Carol Witherell–Niec, Defendants–Appellees.**

**No. 89–1199.**

United States Court of Appeals, Seventh Circuit.

Submitted Nov. 26, 1990 *.

Decided Jan. 3, 1991 **.

Amended as an Opinion Feb. 8, 1991.

---

* After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." *See* Fed.R. App.P. 34(a); Circuit Rule 34(f). No such state-

** This appeal was originally decided by unpublished order on January 3, 1991. *See* Circuit Rule 53. The court, upon request, issues this decision as an opinion.

John L. Gubbins, Gubbins & Associates, Chicago, Ill., for plaintiff-appellant.

Judson H. Miner, Chicago, Ill. and Mary L. Smith, Corp. Counsel, Office of the Corp. Counsel, Chicago, Ill., for defendants-appellees.

Before WOOD, Jr., COFFEY and KANNE, Circuit Judges.

KANNE, Circuit Judge.

This employment discrimination case involves a photographer, a mayor, and a queen. Plaintiff-appellant Armando Villa was hired as a staff photographer for the City of Chicago after he asked for a job from former Mayor Jane Byrne's husband, Jay McMullen. Villa was given a job in the Graphics and Reproduction Center (GRC) where he photographed city functions during the day and filled in for the Mayor's personal photographer on weekends and evenings.

From the start Villa had problems in the position. He attended and photographed events to which he was not assigned. He took pictures of the Mayor at inopportune moments. By his own admission he was "pushy" and in time had rankled the Mayor's bodyguards, her personal photographer, and members of the Press Office. These missteps led to a nasty letter from Rose Mary Marasso, the Supervisor in the Mayor's Press Office, to the Mayor's press secretary, voicing objections to using Villa as a backup photographer. The Director of the GRC, Carol Niec, also received complaints from Marasso and the Mayor's Press Office regarding Villa's unwillingness to follow instructions. In addition, he had several conflicts with a fellow photographer in the GRC.

Villa's big opportunity came on June 24, 1982, when Queen Beatrix and her husband Prince Claus of the Netherlands visited Chicago as the Mayor's guest. Byrne's regular photographer was not available to cover a gala dinner at the Navy Pier Auditorium and Villa was assigned in her place. At one point, the Queen and the Mayor retired to a private lounge area, next to the washrooms, with their husbands. Villa followed them into the lounge and snapped a picture of the Queen while she was fixing her make-up. One supervisor called this "the social sin of the season: nobody takes a picture of a Queen making up." Byrne was outraged by Villa's conduct and ordered his immediate discharge.

Villa, wisely, left for California the next day. Records show that he was terminated because he was absent without leave. In fact Villa's immediate supervisor had approved his vacation during this period. This information never reached Niec, who fired Villa on the orders of the Mayor. Later evidence also showed that the real reason for the firing was Villa's poor performance, and in particular, the Queen Beatrix affair.

Villa, an Hispanic of Colombian origin, appeals from the district court's grant of summary judgment in favor of the City in his Title VII action. He also appeals from the grant of summary judgment in favor of the City on a breach of an implied contract under state law. Finally Villa contests the district court's refusal to allow him to file a third amended complaint. We affirm.

## I. TITLE VII

■ In a Title VII case alleging discriminatory treatment, such as this one, the burdens of proof are clear. First the plaintiff must establish by a preponderance of the evidence proof creating a prima facie case of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). Upon establishment of such a case, an inference of discrimination is raised. *See Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 577, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957 (1978). At this stage the court will presume that the employer's actions, if unexplained, were more likely than not the result of impermissible factors. *Chesser v. State of Illinois*, 895 F.2d 330, 333 n. 3 (7th Cir.1990). Facing such a case, the defendant must explain its actions or lose. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 254, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981). Thus the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason" for the plaintiff's disparate treatment. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824. If the defendant carries this burden of production the presumption created upon the establishment of plaintiff's prima facie case drops from the case. *United States Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 715, 103 S.Ct. 1478, 1481, 75 L.Ed.2d 403 (1983). Plaintiff must then persuade the trier of fact by a preponderance of the evidence that he or she is a victim of intentional discrimination, defendant's reason for the disparate treat-ment being nothing more than mere pretext. *McDonnell Douglas*, 411 U.S. at 804, 93 S.Ct. at 1825.

We believe that Villa has failed to meet his initial burden of presenting a prima facie case of discrimination. In order to establish a prima facie case, the plaintiff must show that he is a member of the protected class, that he was meeting his employer's legitimate job expectations, that despite meeting those expectations he was discharged, and that his employer sought a replacement. *Oxman v. WLS–TV*, 846 F.2d 448, 452–53 (7th Cir.1988). Villa has not shown that he was meeting his employer's legitimate expectations. Despite two positive reviews from his immediate supervisor at GRC, Villa made the mistake of angering his ultimate boss, the Mayor. This job required a great deal of tact, which Villa lacked. His final transgression, the photograph of Queen Beatrix powdering her nose, was sufficient in and of itself to show that Villa was not living up to expectations as the Mayor's photographer. Having failed to establish a prima facie case, Villa's Title VII claim must fail.[1]

## II. IMPLIED BREACH OF CONTRACT

■ In order to establish that the City breached its employment contract with Villa, he must first prove that such a contract existed. Villa, like all city workers, was hired subject to a one year period of probation. He alleges that his supervisor, Niec, told him that the conditions of his employment would be governed by the GRC Rules and Reproduction Manual, which included the right to a hearing upon discharge. The City contends, and we agree, that Niec had no authority to enter into a binding oral contract on behalf of the City, particularly in light of the probationary status of new employees. It is well established that a city is generally not legally responsible for acts taken by its officials in excess of their authority. *Shlay v. Montgomery*, 802 F.2d

---

1. Regarding pretext, we would agree with Magistrate Rosemond that the record presents no evidence of national origin discrimination. Although the Mayor's bodyguards commented on Villa's hispanic origins and his co-workers at one point made fun of him on that account, Villa presents no evidence that the decision-makers, the former Mayor or Villa's supervisors, fired him for any other reason than his poor performance.

918, 921 (7th Cir.1986) (citing *Ganley v. City of Chicago*, 18 Ill.App.3d 248, 309 N.E.2d 653, 658 (1974)). Anyone dealing with a governmental body takes the risk of having accurately ascertained that he who purports to act for it stays within the bounds of his or her authority. *Ganley*, 309 N.E.2d at 658. *See Chicago Patrolmen's Ass'n v. City of Chicago*, 56 Ill.2d 503, 309 N.E.2d 3, 6, *cert. denied*, 419 U.S. 839, 95 S.Ct. 68, 42 L.Ed.2d 66 (1974). Only the Director of Personnel had the authority to grant Villa the rights he claims. *See* Chapter 25.1, Chicago Municipal Code. Accordingly, the City is not bound by the alleged oral contract, and this claim must fail.

## III. AMENDMENT OF COMPLAINT

Finally, Villa argues that the district court erred in refusing to allow him to file a third amended complaint. Villa's original complaint, filed on August 10, 1983, alleged: (1) a violation of Title VII; (2) employment discrimination in violation of 42 U.S.C. §§ 1981, and 1983; (3) a conspiracy to violate plaintiff's civil rights under 42 U.S.C. § 1985(3); and (4) a violation of plaintiff's due process rights under sections 1981, 1983, and 1985(3). Villa's amended complaint, filed on August 27, 1984, added a claim of breach of an implied employment contract and consolidated the other counts. On July 7, 1985, Villa filed his second amended complaint which contained only two counts: discrimination under Title VII and a state theory based on breach of implied contract. Now Villa is attempting to refile the counts contained in the original and first amended complaints that were based on sections 1981, 1983, and 1985(3).

■ Whether to grant or deny leave to amend is within the district court's discretion. *Campbell v. Ingersoll Mill. Mach. Co.*, 893 F.2d 925, 927 (7th Cir.1990). Although leave to amend shall be freely given when justice so requires, Fed.R.Civ.P. 15(a), leave is inappropriate where there is undue delay, bad faith, dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, or futility of the amendment. *Foman v. Davis*, 371 U.S. 178, 183, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962).

■ Villa already had several opportunities to amend his complaint by the time he filed his motion to file a third amended complaint. The present motion came over three years after the filing of the original complaint. During that time Judge Parsons granted Villa's *pro se* motion for recusal based on some salutary comments he had made regarding Villa's need for representation of counsel. Magistrate Balog also recused himself after Villa, again acting *pro se*, filed a complaint about him with the Judicial Ethics Committee because he did not want a magistrate deciding his case. All these actions wasted the court's valuable time and led Judge Marovich, the third judge on the case, to call it a "career case." Villa's stubbornness caused much of this delay and we cannot say that he does not bear some responsibility for it. These amendments also show Villa's repeated failure to cure the deficiencies by amendments previously allowed. Villa filed all of the amended complaints while he was represented by counsel. He cannot blame his problems, as his third retained counsel attempts to do on appeal, on the fact that he proceeded *pro se* during a one year stretch of time. Furthermore no new facts or changes in the law warranted the filing of an amended complaint, other than the fact that Villa was represented by a new attorney. We hold that the district court did not abuse its discretion in denying the motion to file a third amended complaint.

For all these reasons, the decision of the district court is

Affirmed.