**Onita MACK, Plaintiff,**

**v.**

**COUNTY OF COOK, Charles F. Lagges, Vijay Panchell and Kenneth Y. Shih, Defendants.**

**No. 91 C 1017.**

United States District Court, N.D. Illinois, E.D.

July 21, 1993.

---

John Joseph McInerney, Thomas J. Finn, Leahy, Eisenberg & Fraenkel, Chicago, IL, for plaintiff.

Onita Mack, pro se.

Denise M. Mercherson, Cook County State's Attorney's Office, Chicago, IL, for defendants.

## OPINION AND ORDER

NORGLE, District Judge:

Before the court is the summary judgment motion of defendants Cook County, Charles F. Lagges, Vijay Panchell and Kenneth Y. Shih. For the following reasons, the motion is granted.

### FACTS

Plaintiff, Onita Mack ("Mack"), was a stenographer IV with the Cook County Department of Environmental Control (the "CCDEC") from July 1, 1987 through March 30, 1990. The CCDEC is the department responsible for determining compliance with county environmental regulations and attending to environmental emergencies. See Tavarez v. O'Malley, 826 F.2d 671, 673 (7th Cir.1987) (CCDEC inspector responded to carbon monoxide-emitting heater in grocery store); these responsibilities require the maintenance of open and available communications throughout the department and with the public. As part of its telephonic communications system, the CCDEC utilizes a rotating relief system to monitor the telephone switchboard at times when the primary and back-up switchboard operators are absent. Mack was one of eight employees who were assigned to the relief system. On August 16, 1989, Mack refused to cover the switchboard, even though she was scheduled to do so. As a result of her failure to perform her duties, Mack received a five-day suspension, which, after Mack filed grievances and attended appeal hearings, was reduced to two days.

Unsatisfied with the reduction in her suspension, Mack, who is a black woman, filed a complaint with the Equal Employment Opportunity Commission ("EEOC") on February 5, 1990, alleging racial discrimination. According to Mack, she endured great strain and distress within the office because her fellow employees harassed her by calling her "derogatory names in regards to her race." Despite her allegations, the EEOC found no evidence of discrimination against Mack, and in fact, the EEOC determined that the CCDEC had suspended non-black persons for similar behavior.

On March 23, 1990, Mack was temporarily assigned to be the backup switchboard operator and was therefore required to relieve the primary receptionist for morning and afternoon breaks and lunch. On March 26, Mack refused to relieve the receptionist for morning break, lunch, or afternoon break. Mack was issued a written warning by the Director of the CCDEC, Charles Lagges, informing her that continued insubordination may lead to dismissal. On March 29 Mack again refused to relieve the receptionist. And she again refused on the thirtieth. As a result of her actions, Director Lagges terminated Mack for gross insubordination.

Mack filed charges on April 2, 1990 with the EEOC against Cook County with regard to her termination on March 30th, claiming that her termination was racially based and was in retaliation for her previous EEOC filing. The EEOC determined that Mack had been discharged after repeatedly refusing to perform her assignment and that there was no evidence that she had been retaliated against by the CCDEC or by her supervisors. The EEOC issued Mack a right-to-sue letter, and thereafter Mack filed her suit with the court.

### DISCUSSION

 Rule 56(c) of the Federal Rules of Civil Procedure provides that for a party to prevail on a summary judgment motion "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, [must] show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Even though all reasonable inferences are drawn in favor of the party opposing the motion, *Beraha v. Baxter Health Care Corp.*, 956 F.2d 1436, 1440 (7th Cir.1992), a scintilla of evidence in support of the nonmovant's position will not suffice to oppose a motion for summary judgment. *Brownell v. Figel*, 950 F.2d 1285, 1289 (7th Cir.1991). Instead,

the nonmoving party must elucidate specific facts demonstrating that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Moreover, to preclude summary judgment the disputed facts must be those that might affect the outcome of the suit, *First Indiana Bank v. Baker*, 957 F.2d 506, 508 (7th Cir. 1992), and a dispute about a material fact is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims and defenses...." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Accordingly, the nonmoving party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact which requires trial. *Bank Leumi Le–Israel, B.M. v. Lee*, 928 F.2d 232, 236 (7th Cir.1991).

 To prevail on a racially-based discriminatory discharge claim under Title VII, Mack must prove that she was a victim of intentional discrimination. *See Morgan v. Harris Trust & Savs. Bank*, 867 F.2d 1023, 1026 (7th Cir.1989) (per curiam). Mack can satisfy her burden of proof either through direct proof of discriminatory intent, *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985), or through the indirect, burden-shifting method of proof articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). These two cases and their progeny have generated two distinct evidentiary paths available to an individual attempting to prove intentional discrimination. Mack has not offered direct evidence of discriminatory intent on the part of Brookfield. *See Trans World Airlines*, 469 U.S. at 121–22, 105 S.Ct. at 622 (rules expressly disfavoring a group based on its protected characteristic constituted direct evidence of discriminatory intent); *Maddox v. Grandview Care Center, Inc.*, 607 F.Supp. 1404 (M.D.Ga.1985) (special rules for maternity leave were direct evidence of discriminatory intent). Accordingly, she relies on the *McDonnell Douglas* indirect, burden-shifting method of proof.

 Under the guidelines established by *McDonnell Douglas*, Mack must initially demonstrate, by a preponderance of the evidence, a *prima facie* case of employment discrimination. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824. Once established, a *prima facie* case creates a rebuttable presumption that the employer's actions, if unexplained, were the result of impermissible factors. *Chesser v. Illinois*, 895 F.2d 330, 333 n. 3 (7th Cir.1990). This rebuttable presumption shifts the burden of production to the employer, which must "articulate some legitimate, nondiscriminatory reason" for the plaintiff's treatment. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824. If the employer fails to offer a legitimate explanation of its actions, judgment will be entered against it, *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 254, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981); if, however, the defendant carries its burden, the presumption of discrimination dissolves, and the plaintiff must then show, again by a preponderance of the evidence, that the employer's explanation for dismissal was nothing more than a mere pretext. *McDonnell Douglas*, 411 U.S. at 804, 93 S.Ct. at 1825; *United States Postal Serv. Bd. v. Aikens*, 460 U.S. 711, 715, 103 S.Ct. 1478, 1482, 75 L.Ed.2d 403 (1983); *Villa v. City of Chicago*, 924 F.2d 629, 631 (7th Cir.1991). The plaintiff bears the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against it, *Burdine*, 450 U.S. at 253, 101 S.Ct. at 1093, and as in the case of all presumptions, *see* Fed.Rule Evid. 301, the ultimate burden of persuasion remains at all times with the plaintiff, *St. Mary's Honor Center v. Hicks*, —— U.S. ——, ——, 113 S.Ct. 2742, 2745, 125 L.Ed.2d 407 (1993).

 To demonstrate a *prima facie* case of discriminatory discharge based on race, Mack must establish that (1) she is a member of a class protected by Title VII, (2) she was doing her work well enough to meet

her employer's legitimate expectations, (3) she was discharged, and (4) after she was discharged, the CCDEC sought a replacement for her. *Villa,* 924 F.2d at 631. If a plaintiff is unable to prove an essential element of the *prima facie* case, all other facts are immaterial, and there can be no genuine issues of material fact. *See Celotex Corp.,* 477 U.S. at 322, 106 S.Ct. at 2552. Therefore, if Mack is unable to establish at least the minimal elements of the *prima facie* case under the *McDonnell Douglas* methodology, the court must enter summary judgment in favor of the defendants. *Id.; see also Randle v. LaSalle Telecommunications, Inc.,* 876 F.2d 563, 567 (7th Cir.1989). Mack has failed to show that she was meeting the CCDEC's legitimate job expectations at the time she was fired and, as a result, she cannot make out a *prima facie* case of discrimination.

The critical issue of Mack's *prima facie* case is whether she was performing well in her job at the time of her termination. *See Karazanos v. Navistar Int'l Transp. Corp.,* 948 F.2d 332, 336 (7th Cir.1991). Mack's performance was not only unsatisfactory but was nonexistent: she completely failed to perform the job that she had been assigned. Mack has introduced evidence that she ably performed her job as a stenographer, receiving good or excellent reviews in areas such as "job skills and techniques," "work habits," "quality of work," and "ability to work with people." The job description of a stenographer IV, however, provides that such employees may be required to temporarily perform duties outside their normal line of work. Thus, although the evidence presented by Mack indicates that she was a competent stenographer, her refusal to participate in the switchboard relief was in derogation of her duties, rendering her job performance unsatisfactory. Therefore, Mack is unable to establish a *prima facie* case of racial discrimination under the *McDonnell Douglas* analysis.

■ In addition to claiming she was terminated because of her race, Mack also alleges that she was terminated in retaliation for the complaint she filed with the EEOC on April 2, 1990. This circuit applies a burden-shifting analysis to retaliatory discharge claims. *Collins v. Illinois,* 830 F.2d 692, 702 (7th Cir.1987). Accordingly, once a *prima facie claim* of retaliatory discharge is made, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for the discharge. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824; *Klein v. Trustees of Indiana Univ.* 766 F.2d 275, 280 (7th Cir.1985). If the employer satisfies this burden, the plaintiff must then have the opportunity to demonstrate by evidence that the reasons articulated by the employer were pretexts. *Burdine,* 450 U.S. at 252–53, 101 S.Ct. at 1093. To make a *prima facie* case of retaliatory discrimination under Title VII, Mack must show that (1) she engaged in a statutorily protected expression, (2) that she suffered an adverse action by her employer, and (3) that there is a causal link between the first two elements. *Jennings v. Tinely Park Community Consol. School Dist.,* 796 F.2d 962, 966–67 (7th Cir.1986), *cert. denied,* 481 U.S. 1017, 107 S.Ct. 1895, 95 L.Ed.2d 502 (1987).

■ Mack has met the first two requirements of a *prima facie* retaliatory discharge case; to meet the third, however, Mack must show that CCDEC, through its directors, would not have terminated her but for her filing of her EEOC complaint. *Klein,* 766 F.2d at 280. The establishment of a causal link requires Mack to provide evidence, "sufficient to raise the inference that the protective activity was the elective reason for the adverse action." *Zanders v. National R.R. Passenger Corp.,* 898 F.2d 1127, 1135 (6th Cir.1990). In attempting to establish an inference of a causal relationship, Mack relies on the temporal sequence of events leading to her termination. *See Holland v. Jefferson Nat. Life Ins. Co.,* 883 F.2d 1307, 1314–15 (7th Cir.1989) (temporal sequence demonstrated causal link). Mack claims that a causal connection is established by "the fact that on February 5, 1990, [she] filed a claim with the EEOC and within six weeks [she] had been terminated from her position at the CCDEC...." Mack, however, omits any mention of the fact that between the time she filed her EEOC complaint and the date she was fired she refused to operate the switch-

board as requested on three separate occasions by her supervisor. This intervening breach of her employment duties renders the temporal period between the EEOC complaint and her termination insufficient to infer a causal connection between the two events.

Mack, however, also contends that in retaliation for her EEOC filing, Director Lagges assigned Mack to be the permanent switchboard reliever, and that this assignment was made with the knowledge that Mack would refuse to perform that job because she had done so in the past. Thus, drawing all inferences in favor of Mack, her allegation that she was requested, within six weeks of filing her EEOC complaint, to perform a job of known repugnance to her and for which refusal to perform would lead to her termination, is sufficient to establish the causal link necessary for the formation of a *prima facie* case of retaliatory discharge.

 The CCDEC rebuts Mack's retaliatory discharge claim with evidence that she was terminated because of her unsatisfactory work, and Mack is unable to demonstrate a pretextual basis for the CCDEC's articulated reasons for termination. Although Mack's filing of her EEOC complaint was an activity protected by Title VII, the EEOC filing does not create the right to fail to perform assigned work, miss work, leave work without permission, or to do or fail to do any number of activities that would be legitimate reasons for dismissing any employee. *See Brown v. Ralston Purina Company*, 557 F.2d 570, 572 (6th Cir.1977); "Internal affairs of employers ... must not be interfered with except to the limited extent that correction is required in discrimination practices." Additional views on H.R. 7152, U.S.Code Cong. & Admin.News, p. 2516 (88th Cong., 2d Sess., 1964). Thus, the court must attempt to balance the protection afforded by Title VII to employees engaging reasonably in activities opposing discrimination with Congress' manifest desire not to tie the hands of employers in the objective selection and control of personnel. *Hochstadt v. Worcester Found. For Experimental Biology*, 545 F.2d 222, 230 (1st Cir.1976).

The CCDEC has introduced evidence that Mack was insubordinate on more than one occasion. Mack's employment record indicates that she was given a verbal warning on December 14, 1987 after becoming involved in a shouting match with another employee. On December 17, 1987, Mack disrupted the office with another shouting match with another employee, and again a verbal warning was issued to Mack. Office disruption and shouting match number three occurred less than four weeks later when a co-worker asked Mack where a fellow employee was, to which Mack responded that she was not a personal information center and accused the co-worker of entering Mack's "space." On September 1, 1988, Mack, revealing her grasp of discriminatory employment practices, refused to be secretary to defendant Kenneth Shih, who was a newly appointed assistant director, because, according to Mack, Shih was unqualified for the job because he was Chinese and did not have proper command of English. Once again, on September 14, 1988, determined not to be mistaken for an "information desk," Mack "screamed" at a visiting attorney who asked her where the restroom was. The record is exiguous as to exigency.

Mack was assigned, on September 20, 1988, to a new job, which she refused to perform; her written refusal, addressed to Director Lagges, expressed her belief that the reassignment was a demotion and that the job was beneath her. The next day Mack walked out in the middle of a meeting called by Director Lagges to discuss her insubordination. A double-whammy occurred later on September 21, 1988, when Mack disrupted the office again with a violent argument with another CCDEC employee and by singing loudly in a manner that required the intervention of an assistant director; once again she was warned to behave herself. Apparently a musical person, Mack's singing again caused a stir on December 16, 1988, at which time a request by a fellow employee to stop her crooning erupted in an argument, disrupting the office. After this incident, a full month passed before any other incident occurred; however on February 17, 1989, Mack refused to copy a document for Director Lagges and then proceed-

ed to loudly berate the director, calling him "incompetent" and "sneaky." Director Lagges requested the immediate dismissal of Mack for gross insubordination. After this incident Mack was apparently trouble-free until the August 16, 1989 episode in which Mack refused to relieve the switchboard operator, which resulted in her two-day suspension, which resulted in her initial EEOC complaint.

 "Title VII tolerates no racial discrimination, subtle or otherwise." *McDonnell Douglas,* 411 U.S. at 801, 93 S.Ct. at 1824. Likewise, Title VII tolerates no discrimination for participation in protected activities; therefore, retaliatory discrimination that, among other reasons, contributes to the discharge of an employee is a violation of the statute. Although Title VII does not tolerate discrimination for participation in protected activities, its statutory scheme does not allow an employee who files a complaint with the EEOC to act with impunity. Title VII provided Mack with a legal remedy for the alleged retaliatory discrimination she claims to have suffered; she did not need to rely on her own action, or inaction as the case may be, to resolve the purported wrong. Mack's claim that she was assigned to operate the switchboard for discriminatory reasons does not explain her refusal to accept that assignment, especially since the temporary operation of the switchboard was a part of Mack's duties. Mack's refusal to perform her assigned duties was apparently the proverbial "last straw" heaped on top an employment record already full of instances of prior insubordination. Although Mack claims that her assignment to the switchboard was the result of her EEOC filing, which is an activity protected by Title VII, it was not a particularly invidious assignment, given the nature and description of Mack's position with the CCDEC; therefore, Mack's refusal to perform her duties constituted a serious act of insubordination, inimical to the CCDEC's interests, and was of an excessive nature which was not warranted as a response to any conduct of the CCDEC. The CCDEC's decision to terminate Mack was based on legitimate and nondiscriminatory reasons and did not infringe on her rights under Title VII.

## CONCLUSION

For the foregoing reasons, the defendants' motion for summary judgment is granted.

IT IS SO ORDERED.