Ashok TANKHA, Plaintiff,

v.

Douglas M. COSTLE, et al., Defendants.

No. 81 C 201.

United States District Court,
N. D. Illinois, E. D.

March 30, 1982.

Richard E. Steck, Chicago, Ill., for plaintiff.

Eileen M. Marutzky, Asst. U. S. Atty., Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Ashok Tankha ("Tankha") sues various officials of the United States Environmental Protection Agency ("EPA") under Title VII, alleging that EPA as Tankha's employer unlawfully discriminated against him in his conditions of employment and in discharging him on account of (1) his race (East Asian), color and national origin (Indian) and (2) his filing of charges protesting the discrimination.[1] Defendants have moved for summary judgment, producing an array of documents to demonstrate that Tankha was fired for incompetence, not be-

---

1. Tankha's Complaint is in two counts, alleging the same facts but different theories of discrimination actionable under Title VII. Count I asserts Tankha was treated differently in his conditions of employment from white co-workers and ultimately discharged because of his "race, color and national origin." Count II realleges the same unequal treatment during employment and subsequent discharge and charges those actions were occasioned by Tankha's filing a grievance charging defendants with discrimination. Tankha also tries to invoke 42 U.S.C. § 1981. Because he is a federal employee seeking to remedy job-related discrimination, Section 1981 is *not* available to him. Title VII is his exclusive remedy. *Brown v. GSA*, 425 U.S. 820, 835, 96 S.Ct. 1961, 1969, 48 L.Ed.2d 402 (1976).

cause of his race or nationality. For the reasons contained in this memorandum opinion and order, defendants' motion is denied.

## Facts[2]

From April 1, 1979 to February 29, 1980 Tankha worked as an EPA Region V (Chicago-based) probationary employee (GS–12 level), serving as an engineer in the engineering section of the enforcement division. Tankha's job, like those of the other engineers working in his section, entailed pollution control engineering.

In early December 1979 Tankha's immediate supervisor, George Czerniak, Jr., gave Tankha an unsatisfactory performance appraisal. EPA gave Tankha 60 days to improve his performance. Shortly after the unfavorable appraisal Tankha filed an informal complaint of discrimination with EPA's Equal Employment Opportunity Office ("EEO Office").[3]

In late February 1980 EPA "terminated" Tankha before expiration of his probationary period. Tankha had filed a formal complaint with the EEO Office about January 31, 1980. Tankha brought this action January 15, 1981.

## Defendants' Summary Judgment Motion

■ Defendants claim Tankha has not made out a prima facie case of disparate treatment under Title VII. If so, they would be entitled to judgment as a matter of law.

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973) teaches what Tankha must establish in prima facie terms:

(1) He belongs to a racial minority.

(2) He applied and was qualified for a job for which the employer was seeking applicants (in illegal discharge cases, like this one, Tankha must show that he was qualified for *retention*).

(3) Despite his qualifications, he was rejected (in this case, *terminated*).

(4) After the rejection, the position remained open and the employer continued to seek applicants of complainant's qualifications.

Defendants do not dispute that Tankha can satisfy *McDonnell Douglas* elements (1), (3) and (4). But they contend Tankha cannot make a sufficient factual showing concerning his qualifications for retention. In sum, defendants argue no genuine issue of fact exists as to whether EPA dismissed Tankha because of incompetence. Having waded through some two inches of documents submitted in connection with this motion, this Court cannot agree.

Defendants have provided a mass of material tending to prove Tankha was incompetent. Czerniak's performance appraisal, for example, evaluated Tankha as "below average" in 9 and "average" in 7 of 16 categories. Czerniak and section chief Larry Kertcher have signed affidavits with detailed evaluations of Tankha's performance. They justify the firing decision on four grounds:

(1) lack of thoroughness in the execution of engineering work, resulting in careless errors unacceptable for an engineer of any level;

(2) lack of meaningful participation during important "113" conferences[4] and plant inspections;

2. This section of the opinion treats with matters not in dispute. Where material dispute exists (the critical factor on a summary judgment motion) the issues will be dealt with in the discussion of legal principles.

3. Tankha's First Affidavit at 1 claims he filed a grievance December 14, 1978 [sic]. Complaint Count II however refers to a complaint to the EPA Region V Equal Employment Officer December 27, 1979. Perhaps Tankha means that the December 14 grievance was filed with Rick Slagle of EPA's Personnel Department and the December 27 grievance with EEO. For present purposes it is of no great moment which date is chosen for the initial filing.

4. This term refers to a conference between EPA representatives and the alleged violator pursuant to Section 113 of the Clean Air Act, 42 U.S.C. § 7401–7642. Such conferences normally take place after EPA has issued a notice of violation, and before the case is disposed of by administrative order or consent decree (or, failing that, suit is filed in federal court). At the conference one or more EPA attorneys and

(3) lack of understanding of EPA goals, resulting in abrasive and inappropriate communications with regulated industry;

(4) lack of motivation, initiative and proper attitude as evidenced by Tankha's apparent lack of desire to correct the deficiencies and by periods of inactivity at his desk.

Tankha has submitted two affidavits of his own [5] that engage in an almost point-by-point rebuttal of defendants' claims. For example, Tankha argues many of the stated reasons for his non-retention—like lack of understanding of policies and goals or poor performance in conferences—are "subjective" in nature and thus may be no more than pretexts for discrimination. Tankha also takes issue with defendants' characterization of the engineer's proper role at a "113" conference. Consequently he argues the more limited part he played was not a manifestation of incompetence.

As to lack of thoroughness as evidenced by careless errors, Tankha contends (Second Affidavit at 6) "my work product was approved without change or with the most modest of changes by Mr. Czerniak, Mr. Kertcher or others responsible in every instance which they now assert to support allegations of my inadequacy." [6] Tankha also asserts personal friction between Czerniak and him flowing at least in part from implicit criticisms of Czerniak in a memo Tankha wrote Kertcher one week before Czerniak gave Tankha the unsatisfactory performance appraisal. That could of course lessen (or even wipe out) the probative value of Czerniak's judgments as to Tankha's performance, if the ultimate trier of fact believed that Czerniak harbored a grudge against Tankha or was otherwise irrationally prejudiced against him.

Tankha's affidavits therefore plainly establish a disputed issue of fact as to his qualifications for retention. Defendants' only response is that even if that issue *is* disputed, they are still entitled to summary judgment because an "employer need only 'articulate *some* legitimate, nondiscriminatory reason for the employee's rejection.'" *Furnco Construction Corp. v. Waters*, 438 U.S. 567, 577–78, 98 S.Ct. 2943, 2949–50, 57 L.Ed.2d 957 (1978), quoting *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824 (emphasis added).

That argument is an impermissible distortion of *Furnco*, and the government must know it. *Furnco* held, in the context of a trial, that the employer has to proffer only some nondiscriminatory reason for an employee's rejection—or non-retention—to allow a trier of fact to find that the employer had successfully rebutted plaintiff's prima facie case. In the *McDonnell Douglas* analysis, that simply shifts the evidentiary burden back to the plaintiff to show that the asserted reason is pretextual. *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 252–56, 101 S.Ct. 1089, 1093–95, 67 L.Ed.2d 207 (1981). Tankha's massive tender of evidence plainly raises a factual question on the latter issue as well.[7] Defendants can offer no authority for the proposition that an employer is *entitled to judgment as a matter of law* simply because

engineers present their case against the violator, who may in turn contest the EPA's case or discuss the feasibility of achieving compliance and a compliance schedule. *See* Czerniak Affidavit at 7, 13.

**5.** One of these, obviously prepared by Tankha himself rather than his lawyer, is some 45 single-spaced pages, discursive and difficult to follow in many respects. It is accompanied by over 200 pages of exhibits, many of them Tankha's own detailed statements of like kind. It is frankly an imposition on the Court for counsel to default in his responsibilities to filter and organize such materials, instead dumping them on the Court in their raw form.

**6.** Acceptance of work without express reservation by supervisors has been held to support a finding that a Title VII plaintiff was "meeting normal job requirements." It thus may be used to establish a *McDonnell Douglas* prima facie case of "qualified for retention." *Flowers v. Crouch-Walker Corp.*, 552 F.2d 1277, 1282–83 (7th Cir. 1977).

**7.** Only one example need be noted: the same evidence already referred to from which a trier of fact might view Czerniak as motivated by prejudice rather than objective evaluation of Tankha.

it can put forth *some* possible legal justification for the plaintiff's discharge.

## Conclusion

For the reasons stated in this memorandum opinion and order, defendants' Rule 56 summary judgment motion is denied.[8]

8. This opinion should not of course be read as expressing any opinion on the merits. Defendants have presented a substantial body of evidence that the fact finder may find far more persuasive than Tankha's. But weighing the evidence is not the Court's role under Rule 56.