**Young In HONG, Plaintiff–Appellant,**

v.

**CHILDREN'S MEMORIAL HOSPITAL, Defendant–Appellee.**

No. 92–1802.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 10, 1992.

Decided May 12, 1993.

Rehearing and Rehearing In Banc Denied July 22, 1993.

Jill L. Kline (argued), Oshkosh, WI, for plaintiff-appellant.

Donald F. Peters, Jr., Thomas T. Cavanaugh (argued) and Ann Haule, Children's Memorial Hosp., Chicago, IL, for defendant-appellee.

Before KANNE and ROVNER, Circuit Judges, and REYNOLDS, Senior District Judge.*

KANNE, Circuit Judge.

Young In Hong, an American citizen of Korean ancestry, sued Children's Memorial Hospital under Title VII, alleging that she was unlawfully discharged from her employment because of her national origin. The district court granted summary judgment for the defendant. We affirm.

I.

Children's Memorial Hospital hired Young In Hong in November 1968 as a medical technologist in the hospital's Clinical Chemistry Laboratory. As a technologist, Ms. Hong conducted tests on patient specimens in accordance with hospital procedures and quality control measures. She worked part-time until October 15, 1976, when she was made a full-time medical technologist, or "Medical Technologist II." In April 1981, as the result of an across-the-board salary adjustment applicable to all medical technologists working in the laboratory, Ms. Hong's employment classification was changed to that of a "Medical Technologist III."

From 1976 until her discharge in October 1987, Ms. Hong's immediate supervisor was Marina Barrientos. As one of her responsibilities, Ms. Barrientos conducted annual performance appraisals of Ms. Hong's work. The record shows that, prior to 1985, these reviews were generally favorable. Dr. Frederick Smith, Division Head of the Department of Clinical Pathology at Children's Memorial Hospital, supervised the Clinical Chemistry Laboratory, but did not participate in either annual evaluations of medical technologists or informal disciplinary matters.

Beginning in early 1986, the hospital commenced an internal evaluation of its laboratory operations for the purpose of upgrading equipment and technology, and improving overall performance. In addition to installing more modern instrumentation, Dr. Smith implemented a computerized quality control system for use in specimen testing. All medical technologists received training in the new procedures and on the new instruments.

In 1985, 1986, and 1987, Ms. Hong's annual performance evaluation scores steadily declined. Among other things, she was cited for excessive absenteeism, failure to perform assigned tasks in a timely manner, failure to identify instrument malfunctions during testing procedures, failure to report test results to her supervisors, failure to maintain laboratory inventory, and failure to follow the laboratory's quality control and management procedures. In addition, from February 1986 to July 1987, Ms. Hong was issued seven formal written disciplinary notices for deficiencies in her work and uncooperative behavior. Two of these reports resulted in probationary periods of two and three months; a third resulted in a two-day suspension. She also received informal counselling from her superiors, including additional training on the new quality control instruments.

On March 5, 1987, Dr. Smith sent Ms. Hong a memorandum informing her of the two month probation mentioned above and explaining that unless her performance on the job improved to an acceptable level during that period she would be discharged. Seven months later, on October 20, after yet another formal disciplinary notice, Dr. Smith sent Ms. Hong a memorandum stating that

---

* The Honorable John W. Reynolds, Senior District Judge for the Eastern District of Wisconsin, is sitting by designation.

her term of employment in the Clinical Chemistry Laboratory was at an end. The memo indicated that staff are obliged to conduct laboratory work reliably and quickly for the benefit of patients and that Ms. Hong's poor performance record over the previous year and a half was simply unsatisfactory. She was encouraged to seek other suitable positions within the hospital, and was advised of her right to file an internal grievance. She did file a grievance, and received a hearing before a committee composed of hospital management and staff. The committee affirmed Dr. Smith's decision.

Ms. Hong then brought this suit in federal district court, averring that Children's Memorial Hospital had wrongfully discharged her from its employ because of her Korean ancestry, in violation of Title VII of the 1964 Civil Rights Act. The hospital filed an answer to the complaint and moved for summary judgment on the grounds that the plaintiff had failed to establish a prima facie case of discriminatory discharge or, in the alternative, assuming the existence of a prima facie case, had failed to produce sufficient evidence from which a jury could find that the hospital's stated reason for discharging her—inadequate job performance—was a pretext for unlawful discrimination. The district court granted the motion, concluding that the case was "too thin to permit a trier of fact to return a verdict for Hong" because she had produced "insufficient evidence to refute the claim that her work was not meeting her employer's reasonable expectations of job performance at the time she was fired and a fortiori to show that the stated reason [for discharge] is a pretext."

On appeal, the plaintiff points to four actions by her superiors at Children's Memorial Hospital to substantiate her claim of intentional discrimination. First, she alleges that, after her discharge, her now deceased brother-in-law, who was then working part-time at the hospital, visited Dr. Smith. According to the plaintiff, Smith told her brother-in-law that Ms. Hong should "move back to Korea." Second, the plaintiff claims that her supervisor, Marina Barrientos, told her repeatedly

at work to "learn to speak English," despite the absence of evidence that the plaintiff spoke anything other than English. This disparaging remark was usually made on occasions when Ms. Barrientos had made some mistake, and sometimes for no apparent reason. What's more, according to the plaintiff, Ms. Barrientos made the remark most often in 1987, the year in which the plaintiff received her lowest performance evaluation score, was subjected to the most disciplinary actions, and ultimately discharged.

Third, the plaintiff alleges that certain of the disciplinary actions taken against her in 1987 near the time of her discharge evidence discriminatory treatment and present genuine issues of material fact precluding summary judgment. Specifically, she disputes the defendant's version of three instances of substandard work that, in addition to two others, resulted in the issuance of a formal disciplinary notice and a two-day suspension from work. Finally, the plaintiff claims that she was singled out for disciplinary action, and that non-Korean medical technologists with comparable annual evaluation scores were not discharged. This evidence of disparate treatment,[1] the plaintiff submits, demonstrates that the hospital's stated reason for discharging her was pretextual.

## II.

Because there appears to be some disagreement between the parties on the issue, we begin by setting forth the correct standard of review. We review *de novo* a district court's grant of summary judgment under Rule 56(c) of the Federal Rules of Civil Procedure, examining the entire record in a light most favorable to the party opposing the motion to determine whether any genuine issues of material fact exist. *McCoy v. WGN Continental Broadcasting Company*, 957 F.2d 368, 370 (7th Cir.1992). Application of Rule 56 involves "the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be

---

1. In *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 335 n. 15, 97 S.Ct. 1843, 1854 n. 15, 52 L.Ed.2d 396 (1977), the Supreme Court described disparate treatment as "the most easily understood type of discrimination. The employer simply treats some people less favorably than others because of their race, color, religion, sex, or national origin."

resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).[2]

 We recognize that summary judgment is often an inappropriate method of resolving Title VII claims in which the defendant's intent, as the plaintiff urges here, is the central issue. *See ·Friedel v. City of Madison*, 832 F.2d 965, 972 (7th Cir.1987); *Powers v. Dole*, 782 F.2d 689, 694 (7th Cir. 1986). However, a plaintiff facing the prospect of summary adjudication cannot "sit back and simply poke holes in the moving party's summary judgment motion." *Fitzpatrick v. Catholic Bishop of Chicago*, 916 F.2d 1254, 1256 (7th Cir.1990). If the nonmovant bears the burden of proof on an issue, she may not rest on the pleadings; rather, she must affirmatively set forth specific facts showing that there is a genuine issue of material fact. *Celotex Corporation v. Catrett*, 477 U.S. 317, 322–26, 106 S.Ct. 2548, 2552–54, 91 L.Ed.2d 265 (1986). *See also Randle v. LaSalle Telecommunications, Inc.*, 876 F.2d 563, 567 (7th Cir.1989).

 To ultimately prevail on a disparate treatment claim under Title VII, the plaintiff must prove that she was a victim of intentional discrimination. *See Morgan v. Harris Trust and Savings Bank of Chicago*, 867 F.2d 1023, 1026 (7th Cir.1989) (per curiam). The plaintiff can satisfy her burden of proof either through direct proof of discriminatory intent, *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985), or through the indirect, burden-shifting method of proof articulated in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). These two methods constitute distinct evidentiary paths available to an individual attempting to prove intentional discrimination. In this case, Ms. Hong relies on the indirect, burden-shifting method of proof.

 Under the *McDonnell Douglas* framework, the plaintiff must first establish, by a preponderance of the evidence, a prima facie case of employment discrimination. *Id.*

at 802, 93 S.Ct. at 1824. Once established, the prima facie case creates a rebuttable presumption that the employer's actions, if unexplained, were the result of impermissible factors. *Chesser v. State of Illinois*, 895 F.2d 330, 333 n. 3 (7th Cir.1990). At this point, the defendant must explain its actions or lose, *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 254, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981); the burden of production therefore shifts to the employer "to articulate some legitimate, nondiscriminatory reason" for the plaintiff's treatment. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824. If the defendant carries its burden, the presumption of discrimination drops from the case, *United States Postal Service Board of Governors v. Aikens*, 460 U.S. 711, 715, 103 S.Ct. 1478, 1481, 75 L.Ed.2d 403 (1983), and the plaintiff must then show, again by a preponderance of the evidence, that she is a victim of intentional discrimination, the defendant's stated reason for dismissal being nothing more than a mere pretext. *McDonnell Douglas*, 411 S.Ct. at 804, 93 S.Ct. at 1825. *See also Villa v. City of Chicago*, 924 F.2d 629, 631 (7th Cir.1991). At all times, of course, the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains with the plaintiff. *Burdine*, 450 U.S. at 253, 101 S.Ct. at 1093.

 To establish a prima facie case of national origin discrimination, the plaintiff is required to show that (1) she is a member of a protected class, (2) she was doing her work well enough to meet her employer's legitimate expectations, (3) despite her performance, she was discharged, and (4) her employer sought a replacement for her. *Villa*, 924 F.2d at 631. Without a prima facie case, the plaintiff cannot withstand summary judgment. *See Gilty v. Village of Oak Park*, 919 F.2d 1247, 1250 (7th Cir.1990). In a recent case we observed:

> The initial elements of the prima facie case are relatively simple to prove. The elements and the subsequent "shifting burdens of proof set forth in *McDonnell*

---

2. We have elsewhere described the "practical" test for summary judgment as "whether the nonmovant has a fighting chance at trial." *Shager v.*

*Upjohn Company*, 913 F.2d 398, 403 (7th Cir. 1990).

*Douglas* are designed to assure that the 'plaintiff [has] his day in court despite the unavailability of direct evidence.'" *Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111, 121, 105 S.Ct. 613, 622, 83 L.Ed.2d 523 (1985) (quoting *Loeb v. Textron, Inc.,* 600 F.2d 1003, 1014 (1st Cir.1979)). Thus where the nonmovant is unable to establish at least the minimal elements of the prima facie case under the *McDonnell Douglas* methodology, the entry of summary judgment is required. *See Celotex Corp.,* 477 U.S. at 322, 106 S.Ct. at 2552. It is axiomatic that there can be no genuine issues of material fact if the plaintiff is unable to establish a prima facie case "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323, 106 S.Ct. at 2553.

*Randle,* 876 F.2d at 568 (alteration in original).

The district court ruled that the plaintiff had failed to show that she was meeting her employer's legitimate job expectations at the time she was fired and, as a result, could not make out a prima facie case of discrimination. We agree.

 As an element of her prima facie case, the plaintiff was required to show that her performance on the job was adequate. *See Shager v. Upjohn Company,* 913 F.2d at 400; *Yarbrough v. Tower Oldsmobile, Inc.,* 789 F.2d 508, 511 n. 4 (7th Cir.1986). She cannot satisfy this requirement by showing that her performance was adequate for some period of time during her employment at Children's Memorial Hospital, however. The critical issue is whether she was performing well in her job at the time of her termination. *See Karazanos v. Navistar International Transportation Corporation,* 948 F.2d 332, 336 (7th Cir.1991).

 In the Clinical Chemistry Laboratory, medical technologists receive annual written evaluations scored on a range from 100 points (quality and quantity of work is "marginal") to 400 points (quality and quantity of work is "consistently exceptional"). A score of 200 denotes competency, while a score of 300 "exceeds expectations." We accept the plaintiff's contention that her evaluations for the better part of her first seventeen years at the hospital were favorable. We also credit her assertion that her performance scores for 1981–1984 were consistently between "exceeds expectations" and "consistently exceptional."

In 1985, the plaintiff received a total evaluation score of 230 and had no written disciplinary notices in her file. The following year she received a score of 225 and, in 1987, a score of 140. She offers the evaluations, particularly the last, as evidence of disparate treatment inasmuch as other, non-Korean medical technologists who received "similar scores" on their evaluations were not discharged. The plaintiff does not dispute that identical pre-printed appraisal forms are used to evaluate all medical technologists, nor does she contend that the criteria used in evaluations are unrelated to job performance or otherwise suspect. More importantly, she does not challenge Dr. Smith's testimony that the hospital considers an employee's disciplinary record as well as annual evaluation scores to measure job performance.[3]

 Against the record in this case, the plaintiff's bare assertion of disparate treatment is not persuasive. First, she has not presented sufficient evidence that her annual evaluation scores were comparable to those of other medical technologists who were not discharged by the hospital. Indeed, all of the non-Korean technologists to whom the plaintiff refers in her brief to this court had higher evaluation scores than she did in 1986 and 1987. The only technologist with an annual score comparatively close to the plaintiff's 1987 score of 140 was Iqbal Mohammed, who received a score of 185. The plaintiff points to this, in her words, "less than adequate" score, the two disciplinary notices issued to Ms. Mohammed that year, and the fact that Ms. Mohammed was not discharged as proof of disparate treatment.

As a rule, this court will "not sit as a super-personnel department that reexamines an entity's business decisions" in cases where discrimination is alleged. *Dale v. Chicago*

---

3. The plaintiff's evaluations for 1985–1987 include comments concerning unacceptable work and specify dates of disciplinary action taken as a result of poor performance.

*Tribune Company,* 797 F.2d 458, 464 (7th Cir.1986), *cert. denied,* 479 U.S. 1066, 107 S.Ct. 954, 93 L.Ed.2d 1002 (1987). Children's Memorial Hospital is in a better position than this court to assess the relative qualifications of its employees and to determine when an employee's performance is so deficient as to potentially compromise the level of care to which patients are entitled. In 1987, Ms. Mohammed had a higher evaluation score and half as many disciplinary notices as the plaintiff. That the hospital did not discharge Ms. Mohammed as well as the plaintiff is hardly evidence of disparate treatment. Rather, it appears to be a business decision within the defendant's sound discretion.

Furthermore, the record in this case supports the hospital's argument that it takes disciplinary notices seriously. No technologist retained by the hospital was involved in as many disciplinary actions as the plaintiff.[4] In fact, just the opposite is true. As the plaintiff concedes, the one technologist with a comparable disciplinary record suffered the same fate. Delberto Camposagrado was involved in eleven disciplinary actions, formal and informal, over a period of eleven months before being discharged in 1988. Insofar as the plaintiff has produced insufficient evidence that other, non-Korean, medical technologists were similarly situated and not discharged, she has failed to show disparate treatment based on annual evaluation scores.

■ The plaintiff's claim that her disciplinary record is itself the result of discriminatory treatment is also unavailing. The short of the matter is that she has failed to adequately address the defendant's evidence of her substandard job performance in 1986 and 1987.[5] This evidence comprises seven formal disciplinary notices, many of which were the result of several instances of deficient work. In her brief to this court, the plaintiff addresses the incidents that led to

but one of these notices, written by Dr. Smith and dated July 31, 1987. She does not argue that this particular disciplinary action was itself motivated by discriminatory intent on the part of her employer. Rather, she admits that mistakes in the lab were made, but denies responsibility for three of the five events leading up to, and culminating in, the July 31 memorandum. These events include the plaintiff's alleged failure to deliver a work order, her neglect of a patient specimen, and her failure to empty a laboratory freezer.[6] The crux of the plaintiff's argument is that essential facts concerning these events, and relevant to the issue of her termination, are disputed by the parties and summary judgment should therefore be denied in favor of resolving the issue at trial.

■ A factual dispute does not preclude summary judgment unless, of course, the disputed fact is outcome determinative under the governing law. *Egger v. Phillips,* 710 F.2d 292, 296 (7th Cir.), *cert. denied,* 464 U.S. 918, 104 S.Ct. 284, 78 L.Ed.2d 262 (1983). For this reason, we say that "where the *undisputed facts* demonstrate that one party is entitled to judgment as a matter of law, summary judgment in favor of that party is entirely appropriate." *Collins v. American Optometric Association,* 693 F.2d 636, 639 (7th Cir.1982). On seven different occasions the plaintiff was issued notices detailing repeated problems in operating the laboratory's quality control instruments. A disagreement over the correct version of events culminating in *one* of the notices—even if we view the evidence, as we must, in a light most favorable to the plaintiff—does not qualify as a disputed issue of material fact concerning the prima facie element of adequate job performance. *Cf. Tankha v. Costle,* 536 F.Supp. 480, 482 (N.D.Ill.1982) (summary judgment for defendant denied in Title VII case in which the plaintiff rebutted defendants'

---

4. The defendant puts at nine the total number of counselling and disciplinary matters, including discharge, in which Ms. Hong was involved.

5. We have long recognized that an employer's acceptance of work without express reservation is sufficient to show that the plaintiff was performing satisfactorily for the purpose of shifting the burden of proof. *Flowers v. Crouch–Walker Corporation,* 552 F.2d 1277, 1283 (7th Cir.1977).

6. Although the plaintiff complains that the medical technologists responsible for failing to deliver the work order and neglecting the patient specimen were not sought out and questioned, she does not identify these individuals. Indeed, at her deposition the plaintiff could offer nothing beyond a blanket denial of responsibility for the events in question.

claims of inadequate job performance "almost point-by-point").

The plaintiff does not attempt to controvert the substance of the six other disciplinary notices she received, nor does she claim that they were the product of discrimination. She offers no evidence that these actions were the result of illegitimate or arbitrary demands by her employer, *see Kephart v. Institute of Gas Technology*, 630 F.2d 1217, 1223 (7th Cir.1980), *cert. denied*, 450 U.S. 959, 101 S.Ct. 1418, 67 L.Ed.2d 383 (1981), or that other, non-Korean, laboratory employees were not disciplined for similar performance deficiencies. Rather, she altogether fails to address the bulk of the hospital's evidence.

 We do not require a plaintiff bearing the burden of establishing a prima facie case to disprove as a cause of her discharge a source of her employer's dissatisfaction of which she is unaware. *See Flowers*, 552 F.2d at 1283. In this case, however, the record shows that the plaintiff was apprised of all formal disciplinary actions taken by Children's Memorial Hospital. She signed four of the notices, indicating that they had been reviewed with her by her supervisor. In addition, on numerous occasions the plaintiff was individually counselled as to the proper operation of laboratory quality control instruments.

In the face of this evidence of inadequate performance, the plaintiff cannot raise a material issue of fact on the question of the quality of her work merely by challenging the judgment of her superiors with regard to only one of these actions. *See Kephart*, 630 F.2d at 1223. The purpose of the prima facie case is to "eliminate[ ] the most common nondiscriminatory reasons for the plaintiff's rejection." *Burdine*, 450 U.S. at 253–54, 101 S.Ct. at 1094. The plaintiff has not succeeded in this threshold endeavor. When the party moving for summary judgment has carried its burden under Federal Rule of Civil Procedure 56(c), its opponent necessarily fails if she can do no more "than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Company, Ltd. v. Zenith Radio Corporation*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). *See also Celotex*, 477 U.S. at 322–23, 106 S.Ct. at 2552

(movant is entitled to summary judgment against party that fails to make a showing sufficient to establish the existence of an element essential to its case). Uncontradicted evidence reveals that the plaintiff was not living up to her employer's legitimate expectations. It necessarily follows that there are insufficient facts in dispute to permit a finding that the plaintiff has made a prima facie showing of national origin discrimination. *See Kephart*, 630 F.2d at 1223.

### III.

None of the remaining evidence offered by the plaintiff, presumably to show her employer's pretextual motive, disturbs our conclusion that she has failed to carry the initial burden of making out a prima facie case. Recognizing that the prima facie case method was "never intended to be rigid, mechanized, or ritualistic," *Furnco Construction Corporation v. Waters*, 438 U.S. 567, 577, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957 (1978), and that "[t]here are no hard and fast rules as to what evidence must be considered as constituting a *prima facie* case," *Rowe v. Cleveland Pneumatic Company, Numerical Control, Inc.*, 690 F.2d 88, 97 (6th Cir.1982), we address the probative value of the plaintiff's evidence of derogatory remarks. *See Worthy v. United States Steel Corporation*, 616 F.2d 698, 701 (3d Cir.1980) (evidence relevant to the question of pretext can be presented as part of the plaintiff's initial evidence going to the prima facie case itself); *Minority Police Officers Association v. City of South Bend*, 617 F.Supp. 1330, 1353 (N.D.Ind.1985) (same), *aff'd*, 801 F.2d 964 (7th Cir.1986).

The district court refused to consider the plaintiff's deposition testimony that Dr. Smith told her now deceased brother-in-law that the plaintiff should "move back to Korea." According to the court, the offer of proof rested on "rank hearsay." The plaintiff disputes this on appeal, insisting that the alleged statement is not hearsay because she does not offer it for the truth of the matter asserted, to wit, that she should indeed return to Korea. Alternatively, the plaintiff contends that the statement is admissible as a "state of mind" exception to the hearsay

rule under Federal Rule of Evidence 803(3). She is wrong on both counts.

■ We do not consider hearsay statements that are otherwise inadmissible at trial, and this limitation applies to deposition testimony based on inadmissible hearsay. *Randle*, 876 F.2d at 570 n. 4. Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed.R.Evid. 801(c). The out-of-court statement at issue was made by the plaintiff's brother-in-law (the declarant), and doubtless is offered by the plaintiff "to prove the truth of the matter asserted," that is, that Dr. Smith did in fact say what the brother-in-law later reported to the plaintiff. This is inadmissible hearsay, pure and simple.

■ Federal Rule of Evidence 803 lists certain exceptions to the rule against hearsay, including "[a] statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed. . . ." Fed. R.Evid. 803(3). However, the state of mind exception does not authorize receipt of a statement by one person as proof of another's state of mind. 4 DAVID W. LOUISELL & CHRISTOPHER B. MUELLER, FEDERAL EVIDENCE § 441 (1980). *See United States v. Cintolo*, 818 F.2d 980, 1001 (1st Cir.), *cert. denied*, 484 U.S. 913, 108 S.Ct. 259, 98 L.Ed.2d 216 (1987); *Calhoun v. Baylor*, 646 F.2d 1158, 1162 (6th Cir.1981). *See also* H.R.REP. No. 650, 93d Cong., 1st Sess. (1973) ("the Committee intends that [Rule 803(3)] be construed . . . so as to render statements of intent by a declarant admissible only to prove his future conduct, not the future conduct of another person"), *reprinted in* 1974 U.S.C.C.A.N. 7051, 7075, 7087.

Notwithstanding the plaintiff's assertions to the contrary, under Rule 803(3) the "declarant" whose state of mind is made relevant by the proffered statement can only be her brother-in-law, not Dr. Smith. Obviously, the brother-in-law's state of mind is irrelevant to the plaintiff's case. We conclude that the district court properly refused to consider this evidence.

■ The district court did consider the plaintiff's deposition testimony that Marina Barrientos told her to "learn to speak English." The court found that this evidence was not particularly probative of the defendant's intent because employees in the clinical laboratory at Children's Memorial Hospital were required to speak English. The defendant argues on appeal that mandatory use of English insures effective communication within the laboratory as well as between laboratory employees and other hospital personnel. The plaintiff responds that there is no evidence in the record that she ever spoke any language other than English at work, and that Ms. Barrientos's remarks go beyond an admonition to use English because the plaintiff was told to "learn" the language, a term of discriminatory import. The plaintiff draws upon *Minority Police Officers Association*, 617 F.Supp. at 1335, for the proposition that "evidence of racially derogatory remarks, slurs or actions may be relevant and probative evidence in support of a plaintiff's *prima facie* case of discrimination or to show that a defendant's proffered reason was pretext."

We begin with the observation that, even though she asserts on appeal that Ms. Barrientos made this remark "repeatedly," the plaintiff was less than certain on this score during her deposition. She testified that Ms. Barrientos made this remark "[m]aybe more than once," and, when pressed, "[j]ust a few times." She could not recall if anyone else was present on these occasions. The issue is of no great moment, however, because as proof of discriminatory intent this evidence is exiguous.

Although the statement, "learn to speak English," could be circumstantial proof of Ms. Barrientos's discriminatory animus, the plaintiff has failed to show that it is related to the hospital's decision to discharge her. Remarks at work that are based on stereotypes of an individual's national origin do not invariably prove that national origin played a part in an employment decision; the plaintiff must show that the hospital relied on this impermissible criterion in making its deci-

sion. *See McCarthy v. Kemper Life Insurance Companies,* 924 F.2d 683, 686 (7th Cir. 1991). In this case, neither the plaintiff's performance evaluations for the years 1985–1987 nor the seven formal disciplinary notices she received for substandard work (five of which were written by someone other than Marina Barrientos) mention her failure to use English. The plaintiff does not claim that Dr. Smith ever made a derogatory remark of one stripe or another to her, much less that the committee that reviewed and upheld Dr. Smith's decision harbored a discriminatory intent.

■■■ Evidence of a supervisor's occasional or sporadic use of a slur directed at an employees' race, ethnicity, or national origin is generally not enough to support a claim under Title VII. *See, e.g., Nazaire v. Trans World Airlines, Inc.,* 807 F.2d 1372, 1380 (7th Cir.1986), *cert. denied,* 481 U.S. 1039, 107 S.Ct. 1979, 95 L.Ed.2d 819 (1987); *Torres v. County of Oakland,* 758 F.2d 147, 152 (6th Cir.1985); *Johnson v. Bunny Bread Company,* 646 F.2d 1250, 1257 (8th Cir.1981); *Rogers v. Equal Employment Opportunity Commission,* 454 F.2d 234, 238 (5th Cir. 1971), *cert. denied,* 406 U.S. 957, 92 S.Ct. 2058, 32 L.Ed.2d 343 (1972). We have held that such remarks, when unrelated to the decisional process, are insufficient to demonstrate that the employer relied on illegitimate criteria, even when such statements were uttered by a decision maker. *Smith v. Firestone Tire and Rubber Company,* 875 F.2d 1325, 1330 (7th Cir.1989).[7] In opposing the defendant's summary judgment motion, the plaintiff has failed to provide the requisite nexus between Ms. Barrientos's remarks and the hospital's termination decision; evidence of the remarks, without more, does not give rise to an inference of discrimination.

We point out that the plaintiff apparently does not dispute either the existence of the hospital's English-only policy or the defendant's assertion that other non-Korean medical technologists were instructed to use En-glish. Moreover, Ms. Barrientos was the plaintiff's supervisor for approximately ten years. We find it implausible that she would begin to treat the plaintiff in a pejorative manner because of the plaintiff's national origin after eight years of a basically satisfactory and uneventful working relationship, especially when, between 1981–1984, Ms. Barrientos rated the plaintiff's performance as exceeding the hospital's expectations for quality and quantity of work.

It may well be, as the plaintiff contends, that she and Ms. Barrientos had a personality conflict of which Dr. Smith was aware.[8] However, we cannot conclude from this or from Ms. Barrientos's statements, at least without relying on a number of inferences, that the hospital's decision to terminate the plaintiff's employment was the product of intentional national origin discrimination. *See Randle,* 876 F.2d at 570. *See also Henson v. City of Dundee,* 682 F.2d 897, 905 (11th Cir.1982) (to hold an employer liable under Title VII for actions of a supervisor, a plaintiff must show that the employer knew or should have known of the harassment but failed to take prompt remedial action).

Consequently, the plaintiff's reliance on *Tankha v. Costle,* 536 F.Supp. at 482, to support her argument that summary judgment should be denied where a personality conflict between an employee and supervisor "could conceivably have colored the supervisor's assessments of the plaintiff's performance" is unavailing. *Tankha* involved much more than evidence of a mere personality conflict. The plaintiff in that case opposed the employer's motion for summary judgment with affidavits that "engage[d] in almost point-by-point rebuttal" of the employer's claims that the plaintiff was fired for poor job performance. *Id.* The plaintiff also argued that his supervisors supported their allegations of his inadequacy using examples of his work product that they had previously found acceptable. *Id.*

---

7. *Smith* involved a discrimination claim brought under 42 U.S.C. § 1981. It is well settled in this circuit that the methods and order of proof applicable to § 1981 and Title VII claims are identical. *Randle,* 876 F.2d at 568.

8. Ms. Barrientos's remarks give rise, in Ms. Hong's words, to "the allowable inference that Barrientos may have harbored some racially discriminatory animus toward plaintiff, and that this could have affected her assessments of plaintiff's performance, or created a desire to see that plaintiff was terminated."

Such is not the case here. The record leaves us with the firm impression that the plaintiff's troubles on the job had far more to do with learning the laboratory's new computerized quality control system than contending with acts of invidious discrimination by her supervisors. We conclude that the plaintiff's proffer of Ms. Barrientos's remarks is insufficient to stave off summary judgment.

### IV.

As part of her prima facie case of intentional discrimination under Title VII, the plaintiff has failed to establish that she performed her job well enough to meet her employer's legitimate expectations. Likewise, the evidence she presents in an effort to show that national origin was a factor in the hospital's decision to terminate her is insufficient to avert summary adjudication. Accordingly, the district court's grant of summary judgment in favor of Children's Memorial Hospital is AFFIRMED.