LUCERO, Circuit Judge,
concurring in part, dissenting in part.
Because the majority’s decision conflicts with clearly controlling precedent, and because I am concerned that the majority’s approach results in judicial usurpation of the role of the jury and thereby defeat of Title VII and the 1991 Civil Rights Act, I dissent. Under the clearly established case law of the Supreme Court and of this circuit, the evidence presented below was sufficient to create a jury question on Shorter’s claim she was fired because of her race. Summary judgment is meant only to facilitate efficient disposition of cases in which the evidence can lead to but one conclusion; it is not intended to allow the court to substitute its own subjective evaluation of motive, where genuinely disputed, for that of the jury.
Despite its recitation of the standard for reviewing a motion for summary judgment, see Fed.R.Civ.P. 56(c), the majority views the evidence in this case in the light most favorable to defendant ICG Holdings, the moving party. Cf. Applied Genetics Int’l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir.1990) (stating that, in applying the summary judgment standard, “we examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing the motion”). In so doing, the majority improperly assumes the jury’s role of fact finder by weighing conflicting factual claims, drawing inferences from the evidence, and assessing intent.
On my review of the record, I conclude that Shorter has established a prima facie case of disparate impact race discrimination in termination under McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). See Tomsic v. State Farm Mutual Automobile Ins. Co., 85 F.3d 1472, 1476-77 (10th Cir.1996). I agree with the majority that ICG has presented a race-neutral justification for Shorter’s termination. Therefore, the analysis hinges upon whether Shorter has presented sufficient evidence to create a genuine issue of material fact concerning pretext.[1]
In evaluating claims of pretext on summary judgment, we have held that:
It is not the purpose of a motion for summary judgment to force the judge to conduct a “mini trial” to determine the defendant’s true state of mind. So long as the plaintiff has presented evidence of pretext (by demonstrating that the defendant’s proffered non-discriminatory reason is unworthy of belief) upon which a jury could infer discriminatory motive, the case should go to trial. Judgments about intent are best left for trial and are within the province of the jury.
Randle v. City of Aurora, 69 F.3d 441, 453 (10th Cir.1995).
The majority’s statement of the facts fails to characterize the summary judgment materials in the light most favorable to the plaintiff. Most prominently, the majority describes the deposition testimony of ICG employee Kriss Papendick as stating “Dughman told another ICG employee that Shorter talked like people of *1212 her culture, race, or color.” Maj. Op. at 1206. The actual text of Papendick’s deposition testimony makes clear that Dugh-man explicitly linked her evaluation of Shorter’s professional opportunities to her race and/or ethnicity:
Q What did she tell you about Ms. Shorter?
A She told me that there were problems. She told me that she had discussed them with Sheila and everything she had told me, she had already said to Sheila.
She said she felt if Sheila was going to get anywhere in the company, she had to improve the way that she talked.
Q What did she mean by the way she talked?
A She made a comment about the fact that she thought that even though Sheila is an intelligent young woman and that she had a good background or good education, I believe, she talked like other people did in her culture, race. I don’t remember which terms she used, if it was her culture or if it was her race or people of her color. But I remember her specifically stating it, because I was rather surprised.
Appellant’s App. at 412-13.
Likewise, the majority’s statement that Shorter “does not challenge, let alone rebut” ICG’s claims of deficient performance is not appropriate given the standard for summary judgment. Maj. Op. at 1209. The record contains the following evidence that could support an alternative explanation for Shorter’s performance problems: Shorter’s assertions that ICG failed to provide her with necessary support staff, as it did for employees who were not black, and refused to allow her to attend the same training as other employees;[2] former ICG employee Michelle Brough’s statement that ICG’s president was “cold and indifferent to Ms. Shorter,” Appellant’s App. at 407; and the general difficulty of satisfying recruiting needs in a company undergoing rapid growth. The majority omits altogether reference to an ICG employee’s testimony that the complaints about Shorter’s job performance were “not at all” realistic. Appellant’s App. at 411.[3]
Shorter presented additional evidence in the summary judgment materials implicitly addressing the question of pretext: testimony that Dughman had a pattern of arbitrarily terminating employees; testimony that when asked repeatedly, Dugh-man refused to explain why she believed Shorter incompetent; and documentary evidence of Dughman’s own lack of reliability, based on her termination from ICG for resumé fraud, expense account discrepancies, and management style problems.
Under the proper summary judgment framework,- and viewed together with the explicit evidence of racial animus, I believe the inferences to be drawn from this evidence could support a reasonable jury’s decision to credit a claim that ICG’s proffered reason for terminating Shorter was a pretext for discrimination. More to the point, I would not discount statements demonstrating racial animus by the supervisor responsible for Shorter’s termination, when these statements were both proximate in time to Shorter’s termination, and linked her race to job performance.
*1213 The district court erred in finding Dugh-man’s statements inadequate evidence of pretext at the summary judgment stage. Overtly discriminatory statements, even if they lack a sufficient nexus to employment actions to support a direct evidence theory, can nevertheless be used to question a defendant’s proffered neutral justifications. See Medlock v. Ortho Biotech, Inc., 164 F.3d 545, 551 (10th Cir.1999); Conner v. Schnuck Markets, Inc., 121 F.3d 1390, 1396 n. 5 (10th Cir.1997). It is clearly not the law that pretext evidence is only that evidence which rebuts specific elements of the defendant’s explanation. Rather, as here, explicit evidence of racism by a responsible decision maker can lead a reasonable juror to doubt the sincerity of an employer’s explanations. See Rea v. Martin Marietta Corp., 29 F.3d 1450, 1455 (10th Cir.1994) (stating that pretext may be established by showing either “that a discriminatory reason more likely motivated the employer or ... that the employer’s proffered explanation is unworthy of credence”) (quoting Texas Dep’t of Community Affairs v. Burdine, 450 U.S. 248, 256, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)(al-teration in original)).
Evidence of racial motivation can serve to challenge the validity of an employer’s proffered justification, even absent additional independent evidence of falsity. See Price Waterhouse v. Hopkins, 490 U.S. 228, 251, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989) (stating that “stereotyped remarks can certainly be evidence that [impermissible motive] played a part” in an employment decision). The purpose of the pretext analysis is to allow proof of discriminatory intent by permitting a plaintiff to point out a lie offered to obscure such intent. When independent evidence of racism by the decision maker exists with a sufficient nexus to the plaintiff and decision at issue, this can offer viable grounds to refuse to credit the employer’s explanation. See Burdine, 450 U.S. at 256, 101 S.Ct. 1089; see generally 1 Lex K. Larson, Employment Discrimination at 8-88 (2d ed.1998) (stating that “at the second and third stages [of the McDonnell Douglas analysis], direct evidence of discriminatory attitudes or statements, or of their opposite, is relevant and persuasive”). Given the two means of establishing pretext set out in Burdine, 450 U.S. at 256, 101 S.Ct. 1089, I would not discount Dughman’s statements as evidence of racial bias by the relevant decision maker in the context of pretext analysis. The purpose of both direct evidence and pretext theories is to prove or disprove illegal discrimination. See Trans World Airlines, Inc. v. Thurston, 469 U.S. 111, 121, 105 S.Ct. 613, 83 L.Ed.2d 523 ) (1985) (holding that the McDonnell Douglas framework does not apply once plaintiff has presented a direct evidence case, because its purpose is to “assure that the ‘plaintiff [has] his day in court despite the unavailability of direct evidence’ ”) (quoting Loeb v. Textron, Inc., 600 F.2d 1003, 1014 (1st Cir.1979) (alteration in original)); Ramsey, 907 F.2d at 1007-08; see generally 1 Larson, Employment Discrimination at 8-89 to 8-93 (discussing related purposes of direct and indirect evidence methods). We must avoid a formalistic separation of the two that would exclude directly discriminatory statements, insufficient in themselves to prove a direct evidence theory, from consideration under the McDonnell Douglas framework. Such a separation would ignore the fact that the two frameworks are not ends in themselves, but rather means towards a common goal — identifying prohibited discrimination.
I take a very different view than does the majority of the relationship between this case and Cone v. Longmont United Hospital Ass’n, 14 F.3d 526 (10th Cir.1994). In Cone, we rejected “stray” age-related comments by two hospital executives, not specifically directed against the plaintiff, as pretext evidence in an ADEA case. Id. at 531. In Cone, the plaintiff was terminated automatically for failure to return to work, and there was “no evidence that [the executive who uttered two ageist remarks] participated in Ms. Cone’s automatic termination, and age-related *1214 comments by non-decision makers are not material in showing the hospital’s action was based on age discrimination.” Id. There was also no connection shown between remarks regarding long-term employees made by another executive, who was involved in Cone’s termination, and the motives behind that termination. See id. (concluding that the statement “ ‘long-term employees have a diminishing return’ .. could apply equally to employees under age forty.”)
By contrast, the racial remarks at issue in this case were specifically directed at Shorter. Dughman’s characterization of Shorter as an “incompetent nigger” days after Shorter’s termination (by Dughman) explicitly linked a negative characterization of Shorter’s work to an overt racial slur. (Only the jury can weigh the significance of the pairing of those two words.) Similarly, Dughman’s statement that if Shorter wanted to succeed in her job she would have to speak less like a black person specifically linked Shorter’s job performance to race and/or ethnicity. Based on this evidence, a jury could choose to believe that Dughman’s evaluation of Shorter’s performance was so contaminated by racial animus as to render her assertions of inadequate performance unworthy of credence.
This case is necessarily controlled by Tomsic, 85 F.3d 1472. In Tomsic, one plaintiff based a claim of sex discrimination in part on statements by her supervisor, Miller, that “he did not think she would succeed [and that] her husband made too much money and that she therefore would lack incentive.” Id. at 1474. Miller also told other employees, without specifying that it was because of gender, that Tomsic would be fired. See id. at 1474-75. This supervisor told the second plaintiff, in a conceded effort to prompt her resignation, that she would surely encounter marital problems if she continued to perform well at work because she would ultimately earn more money than her husband. See id. at 1475. Although the supervisor at issue did not have the actual authority to terminate the plaintiffs, we nevertheless concluded that his statements supported an inference of pretext. See id. at 1479.
Just as in Tomsic, the remarks at issue in this case “were directed to the plaintiff individually, unlike the very general statements in Cone.” Id. at 1479. As in Tom-sic, the remarks are directly linked to a decision maker with power over the plaintiff. See id. Noting the fact that Miller’s sexist comments were before the manager responsible for asking for the plaintiffs’ resignation, we stated in Tomsic that “we believe that this is a sufficient nexus to the decision to ask for plaintiffs’ resignation; a jury could infer from Miller’s remarks in the total context presented that unlawful bias was a motivating factor in defendant’s decision.” Id. The nexus in this case is even stronger. Dughman, unlike Miller, had — and exercised — full authority to terminate Shorter. Because this case presents similar yet even stronger evidence of a nexus, the result reached by the majority conflicts squarely with our precedent in Tomsic.
The majority’s resort to Hong v. Children’s Mem’l Hosp., 993 F.2d 1257, 1265-66 (7th Cir.1993), does not persuade me otherwise. In Hong, the Seventh Circuit relied on the fact that the racial slurs were “unrelated to the decisional process” to reject them as evidence of discrimination. Hong, 993 F.2d at 1266. Here, by contrast, factors exist sufficient to create a jury question on the issue of nexus between the supervisor’s comments and the decisional process. These include: Dugh-man’s statement linking Shorter’s manner of speaking to her job prospects; the close temporal nexus between Shorter’s termination and the racial slur uttered by Dugh-man; and Dughman’s use of that slur in conjunction with the allegation of incompetence. Hong is thus clearly distinguishable.
It is inappropriate, at the summary judgment stage, for the court to weigh evidence of pretext against evidence of neutral motive. The task of considering *1215 this evidence together and weighing competing interpretations is, under the burden-shifting framework, a task for the fact finder. In this case, Tomsic controls the legal question of whether Shorter presented sufficient evidence of pretext to survive summary judgment. A reasonable jury could conclude that the particular racist comments at issue here reveal pretext in Dughman’s assertion that Shorter was terminated for deficient performance, or it could decide to credit ICG’s averments of incompetence. I would allow the members of a jury to assess the evidence and make that determination. I would not substitute our views as appellate judges.
Accordingly, I dissent from the majority’s holding that Shorter failed to present sufficient indirect evidence of discrimination for her claim to survive summary judgment under the McDonnell Douglas framework.[4]

. An employer’s subjective assertions of deficient performance do not suffice to rebut the qualification element of a plaintiffs prima facie case. See MacDonald v. Eastern Wyoming Mental Health Center, 941 F.2d 1115, 1118-22 (10th Cir.1991). Thus, defendant’s allegations of inadequate performance should be considered in evaluating neutral justification and pretext.

. That statements offered to show pretext are plaintiff's own assertions does not preclude their consideration in considering a summary judgment motion. See, e.g., Jackson v. University of Pittsburgh, 826 F.2d 230, 236 (3d Cir.1987).

. Former ICG employee Kriss Papendick testified as follows:
Q Who complained about her job performance?
A Anybody who was trying to get somebody hired that they didn't have them the very next day after they requested it.
Q So people were upset with the speed at which people were hired?
A Yes.
Q Did you feel it was a realistic-did you feel expectations were realistic when these people were complaining?
A Not at all.
Appellant's App. at 411.

. I concur with the majority’s conclusion that the district court did not err in granting summary judgment for ICG on the direct evidence claim. Given the similar levels of connection between discriminatory remarks and employment decisions in the two cases, Tomsic controls on the direct evidence issue just as decidedly as it does on the pretext issue. See Tomsic, 85 F.3d at 1478 (“[Statements "such as those in issue here which 'are on their face expression of ... personal opinion, and not an existing policy which itself constitutes discrimination’ constitute circumstantial or indirect evidence, not direct evidence.”) (quoting Ramsey, 907 F.2d at 1008). I also agree with the majority that the district court did not err in granting summary judgment on Shorter's implied contract claim.