Irene P. **TOMSIC** and Sheila Browning, **Plaintiffs,**

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY** and Norman **Miller, Defendants.**

**Civ. No. 93–C–470G.**

United States District Court, D. Utah, Central Division.

Dec. 9, 1994.

Ronald E. Nehring and Robert Wing, Prince, Yeates & Geldzahler, Salt Lake City, UT, for plaintiffs.

Glenn C. Hanni and David Nielson, Strong & Hanni, Salt Lake City, UT, for defendants State Farm and Norman Miller.

## MEMORANDUM DECISION AND ORDER

J. THOMAS GREENE, District Judge.

This matter came before the Court on October 12, 1994, for a hearing on defendants' State Farm Mutual Automobile Insurance Company ("State Farm") and Norman Miller Motion for Summary Judgment. Defendants State Farm and Norman Miller were represented by Glenn C. Hanni and David Nielson of the law firm Strong & Hanni. Plaintiffs were represented by Ronald E. Nehring and Robert Wing of Prince, Yeates & Geldzahler.

Now being fully advised, and having considered the oral arguments of counsel and the memoranda and documentation on file, the Court renders its Memorandum Decision and Order.

### FACTS

This is a Title VII action by plaintiffs Irene P. Tomsic ("Ms. Tomsic") and Sheila Browning ("Ms. Browning") for wrongful termination based upon gender discrimination. 42 U.S.C. § 2000e-2(a) (1988). Both plaintiffs are female. Plaintiffs also have alleged other claims sounding in both tort and contract.

While both parties have submitted extensive statements of material fact in their memoranda, the essential facts are not in dispute. State Farm hired plaintiffs as at-will employees in its agent training program. Both plaintiffs signed employment contracts which provided that either plaintiffs or State Farm could terminate their relationship upon written notice. Under those contracts, State Farm was obligated to assign to plaintiffs an agency manager to provide training and supervision. Upon successful completion of the training program, plaintiffs were to become independent contractors, working for their own benefit on a commission basis and no longer employees of State Farm.

During their first three months of employment, plaintiffs were placed under the tutelage of Dean Olsen, a State Farm agency manager and trainer. Toby Gonzalez, a male trainee hired at approximately the same time as plaintiffs, was trained by Norman Miller, also a State Farm agency manager and trainer. Plaintiffs received a good deal of instruction and enjoyed a high level of contact with their trainer Dean Olsen during this initial three-month period. Plaintiffs do not complain of the quality of instruction they received from Olsen, and Olsen appears to have been satisfied with the quality of plaintiffs' effort and work. Plaintiff's Opposing Memorandum at ¶ 15.

After the initial three-month period, Olsen was relieved from his duties as plaintiffs' supervisor and trainer, and Norman Miller was assigned in his place. State Farm asserts that a supervisor's involvement with trainees after the initial three-month period typically tapers off to approximately three hours per week. State Farm further asserts that all trainees, Ms. Tomsic, Ms. Browning, and Toby Gonzalez, received approximately three hours of training/supervision per week from Miller. Plaintiffs dispute this assertion, arguing that Mr. Miller spent more time with Toby than he did with them. However, the core of plaintiffs' gender discrimination claims arises out of two conversations between Norman Miller and Ms. Tomsic and Ms. Browning, respectively. These conversations occurred shortly after the plaintiffs were placed under the supervision of Miller in the context of an evaluation or review of plaintiffs' progress as trainees.

In his meeting with Ms. Tomsic, Miller expressed concern that Ms. Tomsic would not be a successful independent contractor because her husband already made a good deal of money, and therefore she lacked incentive. Miller also asked whether Ms. Tomsic's husband was supportive of her career. Noting that Ms. Tomsic was living in Salt Lake City, Utah part-time to attend school while her husband lived in Price, Utah, Miller warned Ms. Tomsic that the divorce rate among State Farm agents was very high and that she might become divorced if she continued as an agent.

In his conversation with Ms. Browning, Miller expressed concern over how Ms. Browning's husband would feel when several years down the road she was making more money than he. Ms. Browning's husband

earlier had applied to be a State Farm agent, but his application had been denied. When asked at his deposition as to the purpose of his inquiry, Norman Miller responded as follows:

> Another female trainee agent that I had had some difficulty [sic]—her husband had some real difficulty when it became evident that she was going to be making more money than he was. And he was to the point where he wanted her to quit because he didn't think he could deal with that, that his wife was making more money than he was. And since that had been recent and fresh on my mind, that conversation, I was concerned that the same might happen in Sheila and Michael Browning's relationship.
>
> I know that Mr. Browning wanted to be a State Farm agent and felt that he should have been a State Farm agent. And the fact that he didn't hadn't received that opportunity and Sheila had, I perceived that there could have been a problem.

Deposition of Norman Miller at 72–73.

With respect to both plaintiffs, State Farm contends that Miller's remarks were made only to ascertain whether plaintiffs were able to make the commitment necessary to become successful State Farm agents. In support of this contention, State Farm proffers the affidavit of Dean Olsen, who avers:

> Being a State Farm agent is a demanding job requiring long, irregular hours of work to be successful. If a new agent has not been used to working long hours, the agent and his or her family may undergo a period of adjustment.
>
> State Farm is concerned about the well-being of its agents and recognizes that successful agents need to find a balance between their careers and their families. I have found that when an agent's family resents the time the agent is required to put in, the agent's productivity can sometimes suffer. Family support is an important aspect of an agent's success.
>
> As an agency manager, I have often asked State Farm agents about their relationships with their families in order to determine how the agent is doing in terms of their professional and personal lives. I

have also made similar inquiries of the agents' spouses to determine how they were handling their spouse's long, irregular hours.

Affidavit of Dean Olsen at ¶¶ 3–7.

Approximately nine months after plaintiffs began their employment at State Farm they were asked to resign their employment as trainee agents and offered a relocation allowance in exchange for their resignations. Norman Miller did not have authority to ask for plaintiffs' resignation, and neither did Miller's supervisor. However, Miller was a member of a three-person panel which had input into such decisions.

Ms. Tomsic accepted State Farm's offer, but Ms. Browning refused. Consequently, State Farm gave written notice to Ms. Browning that her employment was being terminated pursuant to the employment contract. After receiving the notice, Ms. Browning immediately tendered her resignation so that she could receive the relocation allowance offered by State Farm. Neither plaintiff was "terminated" in the ordinary sense of that word, but plaintiffs contend that State Farm's actions were tantamount to termination even though both plaintiffs resigned.

State Farm has asserted legitimate nondiscriminatory reasons for asking for plaintiffs' resignations. In the case of Ms. Tomsic, State Farm alleges:

> [P]oor performance, failure to implement company programs and sales methods, reluctance to receive and accept instruction, failure to recognize and accept sales responsibility for selling life insurance, inability to relate to the agent/manager relationship, and lack of desire to be part of the State Farm district team.

State Farm's Memorandum at ¶ 62. With reference to the request for Ms. Browning's resignation, State Farm alleges:

> [L]ack of performance, unwillingness to receive instruction, insufficient hours spent prospecting, insufficient focus on family insurance check-up and financial need analysis, failure to recognize and take advantage of manager/agent relationship after being asked to do so, and inability to become part of the State Farm team.

State Farm's Memorandum at ¶ 61. State Farm's articulated reasons for asking for plaintiffs' resignation are supported by the three-month evaluation reports of both plaintiffs completed by State Farm. *See* State Farm's Memorandum at ¶¶ 46–47.

At the hearing on the pending motion, plaintiffs stipulated to dismissal of Norman Miller as a party to their Title VII discrimination claims based upon *Sauers v. Salt Lake County*, 1 F.3d 1122 (10th Cir.1993), in which case the Tenth Circuit Court of Appeals ruled that only employers and not individual employees may be held liable under Title VII. Plaintiffs also voluntarily dismissed the following claims against both defendants: Second Claim for Relief (Religious Discrimination); Third Claim for Relief (Breach of Contract); Fourth Claim for Relief (Breach of the Implied Covenant of Good Faith and Fair Dealing); and Sixth Claim for Relief (Intentional Interference With Contractual Relationship), leaving only plaintiffs' claims of gender discrimination and intentional infliction of emotional distress.

*Parties' Arguments*

State Farm contends that plaintiffs have failed to establish the prima facie elements of a Title VII claim as set forth in *Thompson v. Price Broadcasting*, 817 F.Supp. 1538, 1542 (D.Utah 1993). Alternatively, State Farm argues that it has met its burden of production in providing nondiscriminatory reasons for plaintiffs' termination, and plaintiffs have not proffered sufficient evidence to show pretext because of intentional discrimination. On either ground, State Farm contends that summary judgment should be granted in its favor as against each of the plaintiffs.

As to State Farm's assertion that no adequate prima facie Title VII claim has been presented, plaintiffs counter that they have *direct evidence of discrimination* and therefore do not need to comply with "the first two steps of the *McDonnel [McDonnell] Douglas/Burdine* ping-pong scheme," the issue being joined directly on the question of tainted motivation. Plaintiff's Opposing Memorandum at 20 (*quoting Rizzo v. Means Services, Inc.*, 632 F.Supp. 1115 (N.D.Ill. 1986)). In this regard, plaintiffs point to the statements of Norman Miller, noted above, from which they argue that a reasonable jury could find gender discrimination. Plaintiffs argue in the alternative that State Farm has failed sufficiently to establish legitimate, nondiscriminatory reasons for plaintiffs' termination, but that in any event plaintiffs have adduced sufficient evidence to rebut such alleged reasons by presenting a genuine issue of material fact as to the discriminatory intent of State Farm. State Farm maintains that Miller's statements as a matter of law do not constitute direct evidence of discrimination, and that such are insufficient to show intentional discrimination.

With respect to plaintiffs' claims of intentional infliction of emotional distress, State Farm argues that plaintiffs have failed to proffer sufficient evidence to create genuine issues of material fact with respect to any of the elements of that claim as set forth in *Retherford v. AT & T Communications*, 844 P.2d 949, 971 (Utah 1992). Plaintiffs disagree and stand on the record before the Court as constituting sufficient evidence to create a genuine issue of material fact as to each of the elements of their claim for intentional infliction of emotional distress.

## STANDARD OF REVIEW

Summary judgment is properly granted only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. "[A] party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The moving party satisfies this responsibility by pointing out to the Court that there is an absence of evidence to support the nonmovant's case. The moving party need not produce evidence showing the absence of a genuine issue of material fact. *Id.* at 325, 106 S.Ct. at 2553–54.

When a properly supported motion for summary judgment has been made, the non-movant must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). In considering summary judgment, the judge does not weigh the evidence and determine the truth of the matter, but rather determines whether there is a genuine issue for trial. *Id.* at 249, 106 S.Ct. at 2510–11.

## ANALYSIS

### I. TITLE VII DISCRIMINATION CLAIM FOR WRONGFUL TERMINATION

#### A. Prima Facie Case

■ As recently explained by the Supreme Court in *St. Mary's Honor Center v. Hicks*, — U.S. —, — – —, 113 S.Ct. 2742, 2746–47, 125 L.Ed.2d 407 (1993), the initial burden in a Title VII action falls on the employee to establish a prima facie case of discrimination. If the employee can make a prima facie showing, the burden of production shifts to the employer who must establish a legitimate, nondiscriminatory reason for termination. *Id.* Once the employer establishes a nondiscriminatory reason, the burden shifts back to the employee to show that the alleged nondiscriminatory reasons given by the employer were merely pretextual. To show pretext, it is not enough for the employee to show that the employer's reasons were untrue. The employee plaintiff must also prove that she was terminated because the employer *intended* to discriminate against her. *Id.* at — – —, 2752–53. Although the burden of production shifts back and forth between the parties, the burden of persuasion remains upon the employee at all times to show that she "has been the victim of intentional discrimination." *Id.* at — – —, 2747–48. This approach has been followed by the Tenth Circuit Court of Appeals and this District. *See, e.g., EEOC v. Flasher Company, Inc.*, 986 F.2d 1312 (10th Cir.1992); *Thompson v. Price Broadcasting Co.*, 817 F.Supp. 1538, 1541–42 (D.Utah 1993).

■ The Court must first determine whether plaintiffs have made out a prima facie case of discrimination. To establish a prima facie case of discrimination under Title VII, plaintiffs must show the following: (1) they belong to a protected class; (2) they were qualified for the job; (3) they were terminated despite their qualifications; and (4) after their termination, State Farm hired individuals or sought applicants for plaintiffs' vacated positions whose qualifications were no better than those of plaintiffs. *Thompson v. Price Broadcasting Co.*, 817 F.Supp. 1538, 1542 (D.Utah 1993).

■ State Farm does not dispute the first element, and there appear to be genuine issues of material fact with respect to the second and third elements which would preclude entry of summary judgment. However, as to the fourth element, plaintiffs have proffered no evidence tending to show that State Farm hired or sought to hire replacements for plaintiffs. Plaintiffs contend that because Toby Gonzalez moved into Ms. Tomsic's office and could have been assigned and probably was assigned to handle some of plaintiffs' clients after they left State Farm, such facts are the equivalent of hiring a replacement for plaintiffs. Plaintiffs' argument is inapposite. The fact is, State Farm did not hire anyone or seek applicants to replace plaintiffs' vacated positions. Rather, plaintiffs' clients were reassigned among existing agents.

Accordingly, since plaintiffs have not proffered sufficient evidence to establish the fourth element, they have not established a prima facie case of gender discrimination. Nevertheless, plaintiffs' claims could survive State Farm's motion for summary judgment if direct evidence of discrimination has been presented. The Court will next consider the sufficiency of the record in that regard.

#### B. Rebuttal of Alleged Nondiscriminatory Reasons for Discharge

■ Based upon the legitimate, nondiscriminatory reasons for plaintiffs' termination alleged by State Farm, supported by the affidavit of Dean Olsen and the three-month evaluations, the Court finds that State Farm has adduced sufficient evidence to shift

the burden of production and persuasion back to plaintiffs to present evidence that State Farm manifested actual discriminatory intent. Plaintiffs claim that the Miller's comments to plaintiffs set forth above are more than sufficient evidence of discriminatory intent. The Court disagrees. While it is true that Miller's statements may allude to arcane notions of women's role in society, such statements are not direct evidence of discrimination. Indeed, from the context of the statements, it does not appear that Miller even espoused such views. With respect to Ms. Browning, it appears that Miller's concern was that such outdated notions *if espoused by others* might stand in the way of her success as a trainee, and eventually an independent State Farm agent. There appears to be a legitimate business purpose to Mr. Miller's inquiries in this regard. As Dean Olsen's affidavit aptly demonstrates, family obligations directly conflict with the long, irregular hours worked by State Farm agents, and an agent's ability to manage family obligations has a direct impact upon her work. Miller's deposition statement as to why he inquired of Ms. Browning's relationship with her husband bears this out. *Supra* at ——.

Miller's statements to Ms. Tomsic are essentially similar, except that Miller stated in addition that he was concerned about Ms. Tomsic's potential lack of motivation. Again, there is a legitimate business purpose behind this inquiry. Ms. Tomsic's motivation was of key importance to State Farm. Clearly, it would not be in State Farm's interest to expend valuable resources in training Ms. Tomsic if her only motivation was to earn pocket change. While Miller's inquiries perhaps could have been put to Ms. Tomsic more tactfully, they are not damning evidence of discrimination in and of themselves. *See e.g., Ramsey v. City and County of Denver*, 907 F.2d 1004 (10th Cir.1990), *cert. denied* —— U.S. ——, 113 S.Ct. 302, 121 L.Ed.2d 225 (1992) (evidence of stereotypical beliefs insufficient to show direct evidence of discrimination).

■ In any event, plaintiffs have proffered no evidence that Miller's statements had any bearing upon State Farm's decision to ask for plaintiffs' resignation. As the Supreme Court noted in *Price Waterhouse v. Hopkins*, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989):

> Remarks at work that are based on sex stereotypes do not inevitably prove that gender played a part in a particular employment decision. *The plaintiff must show that the employer actually relied on her gender in making its decision.*

*Id.* at 250–52, 109 S.Ct. at 1791 (emphasis added). In this case, it is clear that Miller did not have any direct authority to fire or demote plaintiffs. Therefore, even assuming that Miller's comments were motivated by discriminatory intent, there is no showing that Miller caused or was authorized to effect State Farm's decision to ask for plaintiffs' resignation. As the court noted in *EEOC v. Wendy's of Colorado Springs, Inc.*, 727 F.Supp. 1375, 1380 (D.Colo.1989), statements to the effect that women are better workers than men was not direct evidence of gender discrimination where the person making such statements had no authority to fire or demote the male plaintiff. Simply put, plaintiffs have not linked Miller's statements to State Farm's decision to ask for plaintiffs' resignation. At best, plaintiffs can argue only that a discriminatory intent could be inferred from Miller's statements. Miller's statements therefore are not *direct* evidence of discrimination. *See Heim v. State of Utah*, 8 F.3d 1541, 1547 (10th Cir.1993).

After considering all facts and inferences in a light most favorable to plaintiffs, the Court concludes that plaintiffs have not proffered sufficient direct evidence of discrimination to maintain a Title VII claim. Plaintiffs have failed to adduce sufficient evidence to show that State Farm's alleged nondiscriminatory reasons for termination were mere pretext, and have failed to demonstrate a sufficient nexus between Miller's statements and State Farm's decision to ask for plaintiffs' resignation.

Based upon the foregoing, summary judgment is granted in favor of defendants as to plaintiffs' Title VII gender discrimination claims.

## II. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

■ In order to establish their claim of intentional infliction of emotional distress,

plaintiffs must allege conduct on the part of the defendant that is outrageous and intolerable to the extent that it offends societal standards of morality and decency. *Sperber v. Galigher Ash Co.,* 747 P.2d 1025, 1028 (Utah 1987). Plaintiffs also must allege that State Farm either intentionally or recklessly caused emotional distress to the plaintiffs. *Retherford v. AT & T Communications,* 844 P.2d 949, 971 (Utah 1992).

Plaintiffs contended at the hearing that they have alleged outrageous conduct because, upon hearing of Norman Miller's statements to plaintiffs, a casual conversationalist might be constrained to exclaim, "That's outrageous!" However, colloquialisms do not substitute for legal standards. As the Court previously noted, Miller's statements may be evidence that Miller harbored somewhat arcane notions of women's role in society, but such statements do not constitute the type of outrageous conduct actionable under a claim for intentional infliction of emotional distress. *See, e.g., Public Finance Corp. v. Davis,* 66 Ill.2d 85, 4 Ill.Dec. 652, 360 N.E.2d 765, 767 (1976) (conduct giving rise to action for emotional distress must extend beyond mere insults, indignities, threats, annoyances, petty oppressives or trivialities). In addition, plaintiffs have proffered no evidence to show that State Farm's conduct was either intentional or reckless. Accordingly, summary judgment is granted in favor of defendants and against plaintiffs on their claims for intentional infliction of emotional distress.

Counsel for defendants are directed to prepare and lodge with the Court a form of judgment consistent with this Memorandum Decision and Order after first complying with Local Rule 206(b).

Based upon the foregoing, it is hereby

ORDERED, that Defendants' motion for summary judgment is GRANTED against all of plaintiffs' claims.