UNITED STATES COURT OF APPEALS
**Filed 7/30/96**
FOR THE TENTH CIRCUIT

JAMES JONES,

      Plaintiff-Appellant,

v.

WAL-MART STORES, INC., doing
business as Sam's Club, a Delaware
corporation,

      Defendant-Appellee.

No. 95-5263
(D.C. No. 94-C-867-K)
(N.D. Okla.)

ORDER AND JUDGMENT[*]

Before ANDERSON, LOGAN, and MURPHY, Circuit Judges.

After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument.  See Fed. R. App. P. 34 (f) and 10th Cir. R. 34.1.9.  The case is therefore ordered submitted without oral argument.

---

[*]    This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Plaintiff James Jones appeals the district court's grant of summary judgment in favor of defendant Wal-Mart Stores, Inc. on his employment discrimination claims, brought pursuant to Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-5(f). Because plaintiff raised a triable issue as to whether discrimination motivated defendant's decisions regarding his work assignments, but not his lack of promotion or layoff, we affirm in part and reverse in part.

Plaintiff, an African-American, was employed as a stockperson at Sam's Club in Tulsa, Oklahoma, from May 1992 to December 1992. Plaintiff alleges he was treated less favorably than his white coworkers in his job assignments, in his failure to receive a promotion to team leader, and in his eventual layoff at the end of the Christmas shopping season. The district court granted summary judgment in defendant's favor, finding that plaintiff did not present sufficient evidence of race discrimination or show that defendant's stated reasons for its decisions were pretextual. Plaintiff appealed.

We review a grant of summary judgment de novo, using the same standard applied by the district court. Universal Money Ctrs., Inc. v. American Tel. & Tel. Co., 22 F.3d 1527, 1529 (10th Cir.), cert. denied, 115 S. Ct. 655 (1994). Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). We examine the record and reasonable inferences therefrom in

the light most favorable to the nonmoving party.  Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990).

In race discrimination cases, we apply the three-part burden shifting analysis set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), and its progeny.  See Elmore v. Capstan, Inc., 58 F.3d 525, 529 (10th Cir. 1995).  Under this analysis, the plaintiff must first establish a prima facie case of discrimination.  Id.  The burden then shifts to the defendant to articulate a facially nondiscriminatory reason for the employment decision.  Id. at 530.  Upon such a showing, the presumption of discrimination established by the prima facie showing "simply drops out of the picture."  St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 510-11 (1993).  The plaintiff then carries the full burden of showing that defendant discriminated on the basis of race, "either directly by proving the employer acted with a discriminatory motive," or indirectly by showing the employer's proffered reasons are pretextual.  Elmore, 58 F.3d at 530 (citation omitted).

We first address plaintiff's discriminatory discharge claim.  Plaintiff met his burden of showing a prima facie case of discriminatory discharge through evidence that he is a member of a protected class, was adversely affected by defendant's decision, was qualified for his position, and was laid off when less qualified white coworkers were retained.  See Bell v. American Tel. & Tel. Co,

946 F.2d 1507, 1510 n.1 (10th Cir. 1991). Defendant, in turn, met its burden of producing a legitimate, nondiscriminatory reason for plaintiff's termination by showing that he was included in a group of twelve employees laid off because of the post-Christmas slowdown, and because he was one of the least productive workers. This shifted the burden back to plaintiff to demonstrate that his termination was motivated by racial discrimination.

Plaintiff did not submit any direct evidence of discrimination. His indirect evidence consisted of (1) evidence that when another employee made a racial statement in supervisor Palmer's presence, Palmer did not express disapproval, and (2) observations that plaintiff was a good worker and that his performance was equal to or better than that of white workers who were retained. We agree with the district court that this evidence did not raise a factual issue regarding pretext. Supervisor Palmer's failure to express public disapproval of the racial statement does not mean that he shared its sentiment. Palmer, in fact, contended that he never heard the statement, and that if he had, he would have disciplined the employee. Because the statement was not made by Palmer, the decision maker in this case, and did not relate to plaintiff, his position, or the employment decision, it does not raise the inference of discrimination. See Cone v. Longmont United Hosp. Ass'n, 14 F.3d 526, 531-32 (10th Cir. 1994).

Plaintiff's evidence regarding his performance shows, at most, that defendant may have exercised its business judgment erroneously; however, "an employer's exercise of erroneous or even illogical business judgment does not constitute pretext." Reynolds v. School Dist. No. 1, 69 F.3d 1523, 1535 (10th Cir. 1995). In the absence of evidence of an improper motive, plaintiff has not met his burden of showing that defendant's reasons were pretexts for discrimination.

Plaintiff's evidence in support of his discriminatory promotion claim suffers from the same deficiency. Although plaintiff established a prima facie case by showing that he is African-American, was qualified for the promotion but was not promoted, and that white coworkers were promoted, see id. at 1534, he did not present any evidence that defendant's stated reason for promoting the others, namely that they were more qualified, was unworthy of belief. Therefore summary judgment was proper on plaintiff's failure to promote claim.

Summary judgment should not have been granted, however, on plaintiff's discriminatory work assignment claims. Plaintiff alleges that he was treated less favorably than his white coworkers because he was not given the more desirable position of forklift driver and was assigned to work on the most strenuous aisles.

Title VII prohibits employers from discriminating with respect to "terms, conditions, or privileges of employment," on account of an individual's race,

color, religion, sex or national origin. 42 U.S.C. § 2000e-2(a)(1). Assigning an employee to a less desirable job or denying him the opportunity for a more desirable position, based on the employee's race, are adverse employment decisions affecting the terms and conditions of his employment, and can support Title VII liability. See, e.g.,Williams v. New Orleans S.S. Ass'n, 673 F.2d 742, 752-53 (5th Cir. 1982) (white longshoremen twice as likely as blacks to be given more desirable deck positions, which were less demanding positions that allowed employee to work in fresh air), cert. denied, 460 U.S. 1038 (1983); Eubanks v. Pickens-Bond Constr. Co., 635 F.2d 1341, 1345 (8th Cir. 1980) (African-American cement finishers assigned most menial, unpleasant and onerous duties on job); Fisher v. Procter & Gamble Mfg. Co., 613 F.2d 527, 546 n.37 (5th Cir. 1980) (African-Americans assigned to least desirable positions in plant, while white assigned to more desirable position despite less seniority), cert. denied, 449 U.S. 1115 (1981).

Adapting the McDonnell-Douglas framework to suit this particular controversy, see Tomsic v. State Farm Mutual Auto. Ins. Co., 85 F.3d 1472, 1476 (10th Cir. 1996), we conclude that plaintiff raised a prima facie case by showing that he is African-American, was subjected to adverse employment decisions, was qualified for his job, and was treated less favorably than his white coworkers. That evidence which is also relevant to rebutting defendant's proffered reasons

for its actions or lack thereof is discussed below. Defendant's rebuttal evidence was that those assigned to the forklift position had previous forklift experience, that plaintiff was trained on the forklift but did not show the necessary dexterity or interest, and that plaintiff was assigned to many different aisles during his employment.

The burden then shifted to plaintiff to show that defendant's proffered reasons were pretextual, "by showing either that a discriminatory reason more likely motivated the employer or . . . that the employer's proffered explanation is unworthy of credence." Jones v. Unisys Corp., 54 F.3d 624, 632 (10th Cir. 1995) (quotations omitted). Plaintiff presented the following evidence: (1) the duties of a forklift driver were much more desirable than those of a stockperson, Appel-lant's App. at 5-33, 5-49 to -50, 5-54; (2) several white coworkers who became forklift drivers did not have prior experience, id. at 5-51; (3) contrary to what he was told when hired, plaintiff was never trained to drive a forklift or given a forklift driving test, id. at 5-32, 5-68 to -69; (4) Jeff Jones was the person who made the decision who would become a forklift driver, id. at 5-69; (5) Jeff Jones was a team leader, in management, at the Sam's Club, id. at 5-39, 5-63, 5-65; (6) Jeff Jones treated plaintiff differently than his white coworkers, by driving a forklift wildly around him, refusing to socialize with him, and consistently unloading a disproportionate amount of work at his aisles, id. at 5-50 to -51;

(7) this conduct was observed by a white coworker, who concluded that Jeff Jones had "a prejudicial attitude towards [plaintiff] because he was black," id. at 5-50; (8) plaintiff showed great interest in training for and becoming a forklift driver, id. at 5-68 to -69; (9) the dog food and chemical aisles were the most physically demanding aisles to stock, id. at 5-50; (10) Jeff Jones assigned plaintiff to the dog food aisle, which remained his assignment throughout most of his employment, id. at 5-25 to -26; (11) plaintiff was also required to work the chemical aisle, id. at 4-36, 4-41; and (12) plaintiff was required to help his white coworkers finish their aisles, but they were not required to help him with his, id. at 4-47, 5-46 to -47.

Plaintiff's evidence was sufficient to raise an inference of pretext. Plaintiff produced evidence that both the decision to deny plaintiff a forklift driving position and the decision to assign him to the more strenuous aisles were made by team leader Jeff Jones, and that Jones treated plaintiff less favorably than his white coworkers in many respects, including safety, social relations, and work load. The evidence that plaintiff was required to help his white coworkers, but that they were not required to help him, also supports an inference that he was treated discriminatorily in his assignments. Finally, plaintiff offered evidence that defendant's stated reason for not permitting plaintiff to operate a forklift was unworthy of belief, in that white coworkers were given such an opportunity

despite their lack of prior experience.  Therefore, summary judgment on plaintiff's work assignment claims was not proper.

AFFIRMED in part, REVERSED in part, and REMANDED for further proceedings.

Entered for the Court

James K. Logan
Circuit Judge
